# COMPOSITE EXHIBIT B

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting <u>data</u> pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.     CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>TENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>POLK</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Raymond Munoz, Sheila Munoz, James N. Charles</u>
 Plaintiff
             vs.
<u>CitiMortgage</u>
Defendant

---

**II.     AMOUNT OF CLAIM**

   Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>300,000</u>

**III.     TYPE OF CASE**     (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
 ☐ Business governance
 ☐ Business torts
 ☐ Environmental/Toxic tort
 ☐ Third party indemnification
 ☐ Construction defect
 ☐ Mass tort
 ☐ Negligent security
 ☐ Nursing home negligence
 ☐ Premises liability – commercial
 ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
 ☐ Commercial foreclosure
 ☐ Homestead residential foreclosure
 ☐ Non-homestead residential foreclosure
 ☐ Other real property actions
☐ Professional malpractice
 ☐ Malpractice – business
 ☐ Malpractice – medical

☐ Malpractice – other professional
☒ Other
 ☐ Antitrust/Trade Regulation
 ☐ Business Transaction
 ☒ Circuit Civil - Not Applicable
 ☐ Constitutional challenge-statute or ordinance
 ☐ Constitutional challenge-proposed amendment
 ☐ Corporate Trusts
 ☐ Discrimination-employment or other
 ☐ Insurance claims
 ☐ Intellectual property
 ☐ Libel/Slander
 ☐ Shareholder derivative action
 ☐ Securities litigation
 ☐ Trade secrets
 ☐ Trust litigation

☐ County Civil
 ☐ Small Claims up to $8,000
 ☐ Civil
 ☐ Replevins
 ☐ Evictions
 ☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
　　☒ Monetary;
　　☒ Non-monetary declaratory or injunctive relief;
　　☐ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:**
　　　(Specify)

　　1

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
　　☐ Yes
　　☒ No

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
　　☐ No
　　☒ Yes – If "yes" list all related cases by name, case number and court:

　　　Munoz v. CitiMortgage

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
　　☒ Yes
　　☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ James N. Charles
　　　　　Attorney or party
FL Bar No.: 611840
　　　　(Bar number, if attorney)
　　　　James N. Charles
　　　　(Type or print name)
　Date:   09/01/2020

IN THE CIRCUIT COURT, TENTH JUDICIAL CIRCUIT, IN AND FOR POLK COUNTY, FLORIDA

CASE NO.:

SHEILA R. MUNOZ and RAYMOND MUNOZ,

      Plaintiffs,

      v.

CITIMORTGAGE, INC.

      Defendant.

_____/

### COMPLAINT

Plaintiffs, SHEILA R. MUNOZ and RAYMOND MUNOZ ("Sheila and Raymond Munoz"), sue defendant, CITIMORTGAGE, INC. ("CitiMortgage") and allege as follows:

### General Allegations

1.    This is an action for damages that exceed $30,000 and for injunctive and declaratory relief for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.

2.    The causes of action alleged herein arose in Polk County, Florida.

3.    CitiMortgage is a Florida corporation that is authorized to transact business in the State of Florida.

4.    Sheila and Raymond Munoz are borrowers under a promissory note and mortgage executed by them on or about April 13, 2006.  True copies of the promissory note and mortgage are attached hereto as Exhibits "A-B," respectively.

5.     The owner and holder of the promissory note and mortgage has apparently changed since the loan commenced.  However, at all times material to this action, the owner and holder of the promissory note and mortgage authorized CitiMortgage to act as its agent to service the promissory note and mortgage.

6.     The owner and holder of the promissory note and mortgage has transferred to CitiMortgage the rights and responsibilities to service the promissory note and mortgage and appointed CitiMortgage as its "Attorney-In-Fact" to execute and acknowledge in writing or otherwise all documents customarily and reasonably necessary and appropriate to service the note and mortgage and conferred CitiMortgage with full power and authority to do and perform all and every act and thing and whatever necessary to be done in relation to the promissory note and mortgage that the owner and holder of the promissory note and mortgage itself could do.

### HAMP Loan Modification Agreement

7.     Beginning on or about July 2007, the economy began to plunge, affecting the income of Sheila and Raymond Munoz drastically.

8.     Raymond Munoz is permanently and totally disabled so his monthly income is limited to SSD and Sheila, who was self-employed in the financial services industry, saw her income drop very quickly to almost nothing.

9.     As a result, like thousands of others, Sheila and Raymond Munoz fell behind in their mortgage payments and faced losing their home in foreclosure.

10.     On or about July 27, 2009, Sheila and Raymond Munoz received a letter from CitiMortgage that they "may" qualify for the HAMP program. They sent the

(2)

requested documentation to CitiMortgage and began making the required monthly trial period plan payments.

11.     Finally, on or about July 21, 2010, an entire year after they had applied, Sheila and Raymond Munoz finally received a letter from CitiMortgage that they were approved for a HAMP loan modification.

12.     On or about July 27, 2010, Sheila and Raymond Munoz and CitiMortgage entered into a Home Affordable Modification Agreement ("loan modification agreement") under the federal Home Affordable Modification Program ("HAMP").  A true copy of the modification agreement is attached hereto as Exhibit "C."

13.     The provisions of the loan modification agreement provide that the agreement amends and supplements the promissory note and mortgage attached hereto as Exhibit "A-B."

14.     Section 3 of the modification agreement provides a "New Principal Balance" of $232,016.58, of which $155,536.93 (the "Deferred Principal Balance") is deferred without interest until the new "Maturity Date," which is June 24, 2036.

15.     Therefore, the $155,536.93 Deferred Principal Balance is a balloon payment that is not due until June 24, 2036.

16.     Section 3 of the modification agreement also provides that the difference of the New Principal Balance and Deferred Principal Balance, which is $76,479.65, will have a payment schedule as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Pmt Amt | Payment Begins On | # of Monthly Payments |
|-------|---------------|---------------------------|---------------------|-------------------|------------------------|
| [1-5] | 2% | 8/24/2010 | $231.60 | 9/24/2010 | [60] |

(3)

| [6] | 3% | 8/24/2015 | $269.07 | 9/24/2015 | [12] |
| [7] | 4% | 8/24/2016 | $308.61 | 9/24/2016 | [12] |
| [8-18] | 4.625% | 8/24/2017 | $334.14 | 9/24/2017 | [226] |

17.     Sheila and Raymond Munoz made every payment under the above payment schedule, plus payment of monthly escrow amounts from the beginning payment on September 24, 2010 through the date of filing this complaint.

**Florida Hardest Hit Fund ("HHF") Principal Reduction Program ("PRP")**

18.     On or about March 17, 2014, Sheila and Raymond Munoz were notified that they were approved to receive assistance through the Florida Hardest Hit Fund ("HHF") Principal Reduction Program ("PRP").  True copies of the HHF approval letter, summary disclosure of loan terms, promissory note, rider to promissory note and subordinate mortgage (collectively, "PRP loan documents") are attached hereto as composite Exhibit "D."

19.     The PRP loan documents provided that Sheila and Raymond Munoz would receive $50,000 in Hardest Hit Fund Principal Reduction ("HHF-PR") funds.

20.     The Summary Disclosure and the Rider to Promissory Note both state, "The homeowner's first mortgage loan must be recast in conjunction with the PRP assistance to provide a lower monthly mortgage payment."

21.     As a HAMP participating servicer, CitiMortgage was obligated to comply with the terms of the HAMP loan modification agreement and the PRP loan documents when it accepted the $50,000 HHF-PR funds.

22.     Under the PRP loan documents, CitiMortgage was required to recast Sheila and Raymond Munoz's first mortgage loan to provide them with lower monthly

(4)

mortgage payments that reduced the amounts of the monthly principal and interest payments that were originally provided in the payment schedule of the HAMP loan modification agreement.

23.    Under the HAMP loan modification agreement, CitiMortgage was required to follow the structuring of the loan repayment period through the maturity date of June 24, 2036.

24.    In order to comply with the PRP loan documents and the HAMP loan modification agreement, CitiMortgage was required to recast Sheila and Raymond Munoz's first mortgage loan by re-amortizing the reduced principal amount through the loan period provided in the modification agreement, which was through the maturity date of June 24, 2036.

25.    However, after receiving the HHF-PR funds, CitiMortgage did not recast Sheila and Raymond Munoz's first mortgage loan by re-amortizing the reduced principal amount through the loan period provided in the modification agreement, which was through the maturity date of June 24, 2036.

26.    Instead of reducing their monthly loan payments, CitiMortgage applied the funds to reduce the first mortgage principal balance amount of $76,479.65 by $50,000 and required Sheila and Raymond Munoz to continue making the monthly loan payments originally specified in the payment schedule of the HAMP loan modification agreement with no reduction of those amounts.

27.    Another consequence of CitiMortgage breaching the HAMP loan modification agreement and the PRP loan requirements by applying the HHF-PR funds

(5)

without properly recasting Sheila and Raymond Munoz's first mortgage loan and without lowering their monthly payments of principal and interest was that the reduced interest bearing principal amount ended up being paid off well before the modified loan maturity date of June 24, 2036.

28.  This early payment of the interest bearing principal was further accelerated because CitiMortgage awarded Sheila and Raymond Munoz additional principal reduction amounts: on or about February 29, 2016, CitiMortgage applied an additional $5,000 pay-for-performance principal reduction to the promissory note and mortgage, and then again CitiMortgage applied another $1,000 pay-for-performance principal reduction on or about June 17, 2016.

29.  As a result of CitiMortgage's breaches of the HAMP loan modification agreement and the PRP loan requirements, Sheila and Raymond Munoz did not receive the relief they were entitled to receive under the PRP loan requirements of lower monthly principal and interest payments from the date the $50,000 HHF-PR funds were received by CitiMortgage and applied to reduce the first mortgage principal balance amount of $76,479.65 by $50,000.

30.  This would have been a significantly lower monthly payment and the failure to receive this reduction caused Sheila and Raymond financial hardship and emotional distress.

31.  As a result of CitiMortgage's breaches of the HAMP loan modification agreement and the PRP loan requirements, the interest bearing principal amount ended up

(6)

being paid off apparently on May 2018, which is eighteen (18) years sooner than the actual loan maturity date of June 24, 2036.

32.     The actual payoff of the interest bearing principal amount was clouded because CitiMortgage did not credit the monthly payments Sheila and Raymond Munoz made for February, March and April 2018 and as a result their May 1, 2018 statement was completely erroneous, stating they owed $2,199.64 rather than just the May 1 payment.

33.     On or about April 23, 2018, Sheila Munoz called CitiMortgage and spoke with a representative named Natasha who stated, "the statement cannot be correct" and "it is impossible to explain" and "we will be sending out a new statement."  However, Sheila and Raymond Munoz did not receive a new and corrected statement.

34.     Sheila Munoz was not satisfied with the lack of answers and explanation from Natasha, so she asked to speak with a manager and she was transferred to Rebecca, who identified herself as a manager.

35.     However, the conversation with Rebecca was even more alarming because when Sheila Munoz questioned Rebecca about their HAMP loan modification agreement, Rebecca stated that she never heard of a HAMP program and she knew that Sheila and Raymond Munoz could not be involved in such a program because CitiMortgage did not do such programs.

36.     During the conversation Rebecca stated further that Sheila and Raymond Munoz's deferred principal balance was due in full when they paid off their first mortgage with their May 1, 2018 payment.  This was extremely alarming for Sheila

Munoz because this was the first time hearing this as she had never received any notice or statement that their deferred principal balance was coming due so soon.

37.     Rebecca told Sheila Munoz that she needed to order a payoff amount for the final payment that would trigger the deferred amount to be due and payable in full.

38.     On April 26, Sheila Munoz received a phone call from CitiMortgage representative Matthew Seitz, who stated he was in the CitiMortgage Executive Response Unit.  Matthew said he was so sorry to have to give Sheila the news, but, in fact, the deferred principal would be due in full on May 1, 2018, not June 24, 2036 as Sheila and Raymond Munoz had anticipated.

39.     Matthew Seitz said he would check to see if they might get an extension of time to pay the deferred balance and would call Sheila back.

40.     On or about May 7, 2018, Sheila and Raymond Munez received a letter from CitiMortgage that was dated April 27, 2018.  The letter stated as follows:

> "We have completed a review of your account… …We are taking the appropriate steps to resolve the discrepancy that you brought to our attention.  We may still need to contact you for additional information before we can consider the matter fully resolved."

41.     On or about May 7, 2018, following the receipt of the letter from CitiMortgage, Sheila Munoz called CitiMortgage representative Matthew Seitz to ask him to explain the letter because the letter only vaguely refers to a "discrepancy," but does not explain what the discrepancy was.  Seitz told her that the bottom line for them was that their only option would be to apply for a new modification of their loan.  Seitz

(8)

also emphasized that because "the balloon payment is now due," a new modification of their loan would not extend the deferred principal amount with another balloon payment.

42.     On May 14, 2018, Seitz followed-up with an email to Sheila Munoz stating as follows:

> "Dear Sheila R. Munoz,
>
> Good afternoon!
>
> I hope you are having a great day!
>
> I wanted to know if you and Raymond were going to reapply for a modification please?
>
> [CitiMortgage contact information omitted]
>
> Sincerely,
>
> Matt Seitz
>
> Single Point of Contact
>
> [CitiMortgage contact information omitted]
>
> CitiMortgage, Inc."

43.     Sheila Munoz replied to Seitz's email on May 15, 2018 as follows:

> "Mr. Seitz:
>
> Thank you for your email. To make a decision about a new modification, can you please email us what our current loan status is and why you say our ONLY option is to apply for a modification. To make a solid decision, we need more information. Thanks so much!
>
> Sincerely,
>
> Sheila Munoz"

44.     Seitz responded on May 15, 2018 as follows:

> "Dear Sheila R. Munoz,
>
> Good afternoon!
>
> I hope you are having a great day!
>
> You had paid all of your principal and interest early. The only amount that is due is the deferred amount. So regardless if the modification paperwork said he had a maturity date in 2036 because you and paid principle and

(9)

interest you are now due for the deferred amount as a balloon/one lump sum payment.

Your options are:

1.    To pay off the deferred amount in one lump sum

2.    Apply for a modification to see if we can give your more time to make payments to pay off the deferred amount

3.    Sell the property or do a Deed-In-Lieu

[CitiMortgage contact information omitted]

Sincerely,

Matt Seitz

Single Point of Contact
[CitiMortgage contact information omitted]
CitiMortgage, Inc."

45.    In essence, Seitz was saying that CitiMortgage was not going to remedy the breaches of the promissory note and mortgage as amended and supplemented by the HAMP loan modification agreement and the PRP loan requirements.  Instead of going back and correcting and crediting to Sheila and Raymond Munoz the monthly overcharges that were collected and correcting the monthly payment schedule of the loan and deferral of the balloon principal through the maturity date of June 24, 2036, CitiMortgage was only offering to them an opportunity to "apply" for a new modification without any explanation or commitment of what this new modification would be.

46.    After these communications with CitiMortgage representatives, the only thing clear to Sheila and Raymond Munoz was that CitiMortgage was refusing to correct its errors and that they would need to retain legal counsel to file this lawsuit in order to properly resolve their issues.

(10)

47.     As a result of the above violations by CitiMortgage, Sheila and Raymond Munoz were damaged by having to pay higher monthly payments which caused them further financial difficulties and emotional distress.

48.     As a result of continuation of all of errors in each monthly statement, Sheila and Raymond Munoz feared from month to month that they would lose their home and it was extremely emotionally stressful for them.

### Violations of RESPA

49.     CitiMortgage is a loan servicer of a federally related mortgage loan as defined in RESPA.

50.     On or about March 18, 2019, Sheila and Raymond Munoz received notice that the servicing of their loan was being transferred to Cenlar on April 1, 2019.

51.     However, due to the servicing and statement errors by CitiMortgage, the loan information and monthly statements of the subsequent servicer continued the errors created by CitiMortgage and false claim that the loan was in default and continued without abatement in the monthly statements of Cenlar.

52.     As a result, the emotional distress of Sheila and Raymond Munoz continued.

53.     Therefore, on or about May 6, 2019, Sheila and Raymond Munoz sent CitiMortgage a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the crediting of payments on their mortgage account.

54.     The correction of the errors specified in the qualified written request and the information requested was the only avenue Sheila and Raymond Munoz had to show

(11)

Cenlar that its servicing and monthly statements were erroneous because the information it received from CitiMortgage was erroneous.

55.     In the qualified written request, Sheila and Raymond Munoz specified their reasons for belief that their account was not in default and requested that CitiMortgage correct the errors.

56.     A true and correct copy of the qualified written request is attached hereto as Exhibit "E."

57.     Sheila and Raymond Munoz also requested that CitiMortgage provide them with information and documentation supporting their claim that their account was in default.

58.     All CitiMortgage provided in response to the qualified written request and notice of error was an account history of the loan, but because CitiMortgage did not investigate or correct the errors noticed, the errors continued each month.

59.     Furthermore, review of the account history Sheila and Raymond Munoz received from CitiMortgage shows the violations were even more egregious and numerous than they had previously known.

60.     The account history reveals that each monthly statement misstated the amounts of principal and interest apportioned to the monthly payment and the actual amounts applied each month differed from that disclosed in the statements.

61.     Also the account history reveals that CitiMortgage charged excess interest and other charges that were never disclosed to Sheila and Raymond Munoz in the monthly statements.

(12)

62.     CitiMortgage violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 5 days after receipt of the request.

63.     CitiMortgage violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to conduct an appropriate investigation after receiving the qualified written request and by failing to make appropriate corrections to Sheila and Raymond Munoz's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the them no later than 30 days after receipt of the their qualified written request.

64.     CitiMortgage violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide Sheila and Raymond Munoz with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 30 days after receipt of the Plaintiff's qualified written request.

65.     Upon information and belief, CitiMortgage violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written request and as a result they have suffered a drop in credit rating and reduced access to credit.

66.     CitiMortgage has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

(13)

67.     As a result of the RESPA violations, Sheila and Raymond Munoz feared from month to month that they would lose their home and it was extremely emotionally stressful for them.

68.     As a result of the above RESPA violations alleged above, Sheila and Raymond Munoz have suffered actual damages including emotional distress, incidental and consequential damages.

69.     Under 12 U.S.C. § 2605(f) of RESPA, Sheila and Raymond Munoz have a cause of action against CitiMortgage for actual damages including emotional distress, incidental and consequential damages, statutory damages of up to $2,000 per violation, a declaratory judgment and injunction, costs and for attorney's fees.

70.     Sheila and Raymond Munoz are obligated to pay their attorney a reasonable fee for his services.

71.     Sheila and Raymond Munoz have performed all conditions precedent to bringing this action or any conditions not performed were waived by the acts and conduct of CitiMortgage and CitiMortgage is barred from enforcing any such conditions by estoppel or laches.

WHEREFORE, Sheila and Raymond Munoz request judgment that declares CitiMortgage violated RESPA and that CitiMortgage be injoined and decreed specifically to comply with the promissory note and mortgage as amended and supplemented by the loan modification agreement and PRP loan documents, to correct the account errors specified in the qualified written request and demand actual, incidental, consequential

(14)

and statutory damages, interest, attorney's fees and costs against CitiMortgage and a trial by jury on all issues so triable.

/s/ James N. Charles
JAMES N. CHARLES, ESQUIRE
Florida Bar #611840
1420 Celebration Blvd., Suite 200
Celebration, FL 34747
Telephone (321) 559-1008
Email- jimmy@jimmycharles.net
COUNSEL FOR PLAINTIFFS

(15)

EXHIBIT "A"

# NOTE

| April 13, 2006 | Lakeland | Florida |
|---|---|---|
| [Date] | [City] | [State] |

### 2850 HICKORY RIDGE DR, LAKELAND, FL  33813-5897

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 211,448.59                 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  **Citicorp Trust Bank, fsb**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal and shall accrue daily until the full amount of Principal has been paid based upon a yearly rate of  7.985       %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.  Because interest accrues daily, if my monthly payment is not received by Lender by the date such payment is due, interest will continue to accrue until the day such paymen tis received by Lender.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my first monthly payment on  **May 18, 2006**                and on that day each month thereafter.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest computed to the date of payment before Principal. If, on  **April 18, 2036**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  **Citicorp Trust Bank, fsb, P.O. Box 371453, Pittsburgh, PA  15250-7453**
                                                                                                             or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,549.30**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Application No.                        Account No.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Modified Form 3200 1/01
Modified by Citicorp Trust Bank, fsb
400018 1/2006
Page 1 of 4                          Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees (unless the property is located in West Virginia).

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor (and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below) if the property is located in Virginia). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Application No.                     Account No.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Modified Form 3200 1/01
Modified by Citicorp Trust Bank, fsb                     Page 2 of 4                     Initials:
400018 1/2005

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  [The following provision applies to ALASKA loans only.]**
**NOTICE OF OTHER REMEDIES**

To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

**[The following provision applies to FLORIDA loans only.]**
**DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**[The following provision applies to NEW HAMPSHIRE loans only.]**
**ATTORNEYS' FEES**

Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall sucessfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

Application No. _____    Account No. _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                                      Page 3 of 4                                      Modified Form 3200 1/01
400018 1/2005

[The following provision applies to VERMONT loans only.]

**NOTICE TO CO-SIGNER**

**YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____ (Seal)
                                        SHEILA R. MUNOZ                   -Borrower

_____        _____ (Seal)
                                        RAYMOND MUNOZ                     -Borrower

                                                        *(Sign Original Only)*

Pay to the Order of:

Without Recourse

Citicorp Trust Bank, FSB
Paul DeGruccio, Vice President

Application No. _____   Account No. _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                Page 4 of 4                    Modified Form 3200 1/01
400018 1/2005

2020CA-002715-0000-00        Received in Polk 09/01/2020 08:37 PM

# TIMELY PAYMENT REWARDS ADDENDUM TO NOTE

THIS TIMELY PAYMENT REWARDS ADDENDUM TO NOTE is made this _____13th_____ day of __April_____, __2006__, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of __Citicorp Trust Bank, fsb_____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the _____13th_____ day of __April_____, __2006__ (the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1. **TIMELY PAYMENT REWARDS RATE REDUCTION**

   Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third, or fourth anniversaries of the scheduled due date of the first full installment payment due under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate by ____zero & 50/100___ percentage point (__.5__ %). Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note and Security Instrument before the date the next payment was due; and (b) has never been late by 3 months or more in making any monthly payments due under the Note. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on the first day of the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Timely Payment Rewards Addendum to Note.

_____ (Seal)
SHEILA R MUNOZ                    -Borrower

_____ (Seal)
RAYMOND MUNOZ                     -Borrower

*(Sign Original Only)*

GF400004 (05/01)      Application No. _____      Account No. _____

## ANNUAL PERCENTAGE RATE/PREPAYMENT CHARGE OPTION

Borrower: SHEILA R. MUNOZ, RAYMOND MUNOZ          Lender: Citicorp Trust Bank, fsb
                                                                      4500 Linden Hill Drive
                                                                      Wilmington, DE  19808

Account Number:

This Annual Percentage Rate/Prepayment Charge Option disclosure relates to Borrower's loan transaction with Lender, as indicated by the Account Number above, and to the terms of the Disclosure Statement, Note and Security Agreement that Borrower will sign at closing.

☐      _____/_____(applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is __8.53__ , and Borrower may make a full or partial prepayment of the unpaid principal balance at any time without a prepayment charge, as reflected in Borrower's Disclosure Statement, Note and Security Agreement.

☒      _____/_____(applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is __8.03__ , and Borrower's loan is subject to a prepayment charge according to the provisions in Borrower's Disclosure Statement, Note and Security Agreement.

Borrower acknowledges reading and selecting an annual percentage rate/prepayment charge option by providing Borrower's initials next to the applicable box checked above and signing below.

_Sheila R Munoz_                    4/13/06
SHEILA R. MUNOZ                     Date

_Raymond Munoz_                     4/13/06
RAYMOND MUNOZ                       Date

**Original (Branch)**                              Copy (Customer)

GF21122-1 7/2001 (08/30/2005) [Application No:            Account No:            |

## Governing Law/Prepayment Penalty
### Addendum to Note

THIS GOVERNING LAW/PREPAYMENT PENALTY ADDENDUM TO NOTE (the "Addendum") is made this __13th__ day of ___April, 2006___, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of **Citicorp Trust Bank, fsb** _____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a mortgage/deed of trust/security agreement (the "Security Instrument") in favor of Lender dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**1.     Governing Law.**

This Note will be governed by United States federal law and, to the extent United States federal law is inapplicable, then by the laws of the State of Delaware; except that, with regard to the perfection and enforcement of Lender's security interest in the Property, the Note and Security Instrument will be governed by the law of the state where the Property is located.

**2.     Prepayment Penalty.**

Notwithstanding anything in the Note to the contrary, the "Borrower's Right to Prepay" paragraph in the Note is modified to read, in full, as follows:

"I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Within the first three (3) years from the date of this Note, if I prepay the balance of the Note in full, I agree to pay a prepayment penalty in an amount as follows:

Three percent (3%) of the unpaid Principal Balance of the Note prepaid prior to one year after the date of the Note.
Two percent (2%) of the unpaid Principal Balance of the Note prepaid from one year but prior to two years after the date of the Note.
One percent (1%) of the unpaid Principal Balance of the Note prepaid from two years but prior to three years after the date of the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment Amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes."

GFP300486 8/2005          Application No.                    Account No.

**2020CA-002715-0000-00          Received in Polk 09/01/2020 08:37 PM**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Governing Law/Prepayment Penalty Addendum to Note.

_____ (Seal)
SHEILA R. MUNOZ                -Borrower

_____ (Seal)
RAYMOND MUNOZ                  -Borrower

*(Sign Original Only)*

GF330486 8/2003          Application No.          Account No.

2020CA-002715-0000-00          Received in Polk 09/01/2020 08:37 PM

EXHIBIT "B"

Return To:
Citicorp Trust Bank, fsb
P.O. Box 140759
Irving, TX 75014

INSTR #
BK 06737 PGS 1850-1865 PG(s)16
RECORDED 04/20/2006 08:38:44 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
MTG DOC 740.25
INTANG TAX 422.90
RECORDING FEES 137.50
RECORDED BY L Rutledge

This document was prepared by:
Citicorp Trust Bank, fsb
2161 New Market Pkwy, Ste. 200
New Market Business Park
Marietta, GA 30967

--------------------[Space Above This Line For Recording Data]--------------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **April 13, 2006** together with all Riders to this document.

(B) "Borrower" is  **SHEILA R. MUNOZ AND RAYMOND MUNOZ, WIFE AND HUSBAND**

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is  Citicorp Trust Bank, fsb

Lender is a **Federal Savings Bank**
organized and existing under the laws of  **Delaware**

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010  10/02

-6(FL) (0005)

Page 1 of 16          Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

CitiMortgage 3.0.1.9 V1

Lender's address is **4500 Linden Hill Drive, Wilmington, DE   19808**

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated  **April 13, 2006**

The Note states that Borrower owes Lender  **Two Hundred Eleven Thousand Four Hundred Forty Eight & 59/100**                                                                                      Dollars

(U.S. $**211,448.59**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 18, 2036**.

(E) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

Other(s):

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "**Escrow Items**" means those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

-6(FL) (0005)                        Page 2 of 16                                    Form 3010  10/02

                                                                                    CitiMortgage 3.0.1.9 V1

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the **County**    [Type of Recording Jurisdiction]
of **Polk**                                                                                      [Name of Recording Jurisdiction]:

The Assessor's Parcel Number (Property Tax ID#) for the Real Property is
ALL THAT CERTAIN PARCEL OF LAND IN , POLK COUNTY , STATE OF
FL, AS MORE FULLY DESCRIBED IN OR BOOK 6321 PAGE 0688 ID#
                BEING KNOWN AND DESIGNATED AS LOT 52,
HICKORY RIDGE ADDITION, FILED IN PLAT BOOK 112 AT PAGE 24 AND 25.
BEING THE SAME PROPERTY CONVEYED BY FEE SIMPLE DEED FROM
CLINTON THOMAS NOVOTNY and APRIL MICHELLE NOVOTNY
HUSBAND AND WIFE TO SHEILA R. MUNOZ and RAYMOND MUNOZ ,
DATED 06/30/2005 RECORDED ON 08/01/2005 IN OR BOOK 6321, PAGE
0688 IN POLK COUNTY RECORDS, STATE OF FLORIDA.

Parcel ID Number:                                       which currently has the address of
**2850 HICKORY RIDGE DR**                                                                [Street]
**LAKELAND**                                  [City], Florida **33813-5897**      [Zip Code]
("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials:                         Form 3010  10/02

-6(FL) (0005)                    Page 3 of 16                     CitiMortgage 3.0.1.9 V1

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6(FL) (0005)                                Page 4 of 16                    Initials: ___    Form 3010  10/02

CitiMortgage 3.0.1.9 V1

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6(FL) (0005)                    Page 6 of 16                    Initials: _____ Form 3010 10/02

CitiMortgage 3.0.1.9 V1

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6(FL) (0006)                                Page 6 of 16                                Form 3010  10/02

CitiMortgage 3.0.1.9 V3

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6(FL) (0005)                          Page 7 of 16                          Initials: [signature]          Form 3010  10/02

CitiMortgage 3.0.1.9 V1

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6(FL) (0005)                    Page 8 of 16          Initials:            Form 3010  10/02

CitiMortgage 3.0.1.9 V1

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(FL) (0005)                Page 8 of 18                    Form 3010 10/02

CitiMortgage 3.0.1.9 V1

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6(FL) (0005)                    Page 11 of 16                    Form 3010  10/02

Initials: [signature]

CitiMortgage 3.0.1.9 V1

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

2020CA-002715-0000-00        Received in Polk 09/01/2020 08:37 PM

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6(FL) (0005)                    Page 14 of 16                    Form 3010  10/02
                                                                  CitiMortgage 3.0.1.9 V1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

_Rhonda G Lore_
Rhonda G Lore

_Sheila R Munoz_                    (Seal)
SHEILA R. MUNOZ                    -Borrower

_Raymond Munoz_                    (Seal)
RAYMOND MUNOZ                    -Borrower

STATE OF FLORIDA,
County ss: *Polk*

The foregoing instrument was acknowledged before me this *13th day of April 2006* by

*Shiela R. Munoz , Raymond Munoz*

who is personally known to me or who has produced *FL Driver Licenses* as identification.

*Rhonda G Love*
Notary Public



RHONDA G LOVE
Notary Public - State of Florida
My Commission Expires May 10, 2007
Commission # DD206338

-6(FL) (0005)                    Page 16 of 16                    Form 3010  10/02

CitiMortgage 3.0.1.9 V1

EXHIBIT "C"

**After Recording Return To:**
CitiMortgage
1000 Technology Drive, MS 420
O'Fallon, MO  63368
Doc Prep/Booking & Closing

This document was prepared by Jason Schmatt

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"): SHEILA R MUNOZ and RAYMOND  MUNOZ
Lender or Servicer ("Lender"): CitiMortgage, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 04/13/06
Loan Number:
Property Address ("Property"): 2829 HICKORY RIDGE DR, LAKELAND, FL 33813-5897

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable
Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the
Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together,
as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms
used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send
me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set
forth in Section 2 have been satisfied.

1.      **My Representations**.  I certify, represent to Lender and agree:

      A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to
make the monthly mortgage payments now or in the near future;

      B.      I live in the Property as my principal residence, and the Property has not been
condemned;

      C.      There has been no change in the ownership of the Property since I signed the Loan
Documents;

      D.      I have provided documentation for all income that I receive (and I understand that I am
not required to disclose child support or alimony unless I chose to rely on such income
when requesting to qualify for the Home Affordable Modification program ("Program"));

      E.      Under penalty of perjury, all documents and information I have provided to Lender in
connection with this Agreement, including the documents and information regarding my
eligibility for the Program, are true and correct;

      F.      If Lender requires me to obtain credit counseling in connection with the Program, I will
do so; and

G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 08/24/10 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 09/24/10.

A.    The new Maturity Date will be: 06/24/36.

B.    The amounts listed below were capitalized (added) to your existing unpaid principal balance, less any forgiven principal, for a New Principal Balance.

| Description | Amount Due |
|---|---|
| (1) Unpaid principal balance | $ 204,318.92 |
| (2) Plus: Accrued unpaid interest | $ 26,938.48 |
| (3) Plus: Extension interest | $ 0.00 |
| (4) Plus: Advances regarding real estate taxes to pay insurance premiums | $ 0.00 |
| (5) Plus: Appraisal fees, attorney's fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 759.18 |
| (6) Plus: Advances to establish initial escrow account, if any | $ 0.00 |
| (7) Less: Principal deferred | $ 155,536.93 |
| New Principal Balance | $ 76,479.65 |

I understand that by agreeing to add all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $ 155,536.93 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 76,479.65. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 08/24/10 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 09/24/10. My payment schedule for the modified Loan is as follows until the loan reaches the Maturity Date when the final balloon payment will become due and payable:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| [1-5] | [2.00%] | 08/24/2010 | $231.60 | $234.64, may adjust periodically | $466.24, may adjust periodically | 09/24/2010 | [60] |
| [6] | [3.00%] | 08/24/2015 | $269.07 | May adjust periodically | May adjust periodically | 09/24/2015 | [12] |
| [7] | [4.00%] | 08/24/2016 | $308.61 | May adjust periodically | May adjust periodically | 09/24/2016 | [12] |
| [8-18] | [4.625%] | 08/24/2017 | $334.14 | May adjust periodically | May adjust periodically | 09/24/2017 | [226] |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND

A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

H. Interest will be charged on principal balance until full amount of principal has been paid notwithstanding the manner in which payments were previously applied under the note, all payments made subsequent to date of this modification agreement shall be applied on a scheduled monthly installment basis.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it

is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

M.   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby

_____[Space Below This Line For Acknowledgement]_____

INDIVIDUAL ACKNOWLEDGMENT

State of Florida

County of Polk

Before me, the undersigned authority, on this day personally appeared SHEILA R MUNOZ,
known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are
subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for
the purposes and consideration therein expressed.

Given under my hand and seal this 27th day of July 2010

_Sarah M. Tetreault_____
Notary Public



SARAH M. TETREAULT
Notary Public · State of Florida
My Comm. Expires Jul 31, 2012
Commission # DD 810546
Bonded Through National Notary Assn.

INDIVIDUAL ACKNOWLEDGMENT

State of Florida

County of Polk

Before me, the undersigned authority, on this day personally appeared RAYMOND MUNOZ,
known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are
subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for
the purposes and consideration therein expressed.

Given under my hand and seal this 27th day of July 2010

_Sarah M. Tetreault_____
Notary Public

SARAH M. TETREAULT
Notary Public · State of Florida
My Comm. Expires Jul 31, 2012
Commission # DD 810546
Bonded Through National Notary Assn.



indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.     [ ] If this box is checked, the attached Payment and Escrow Account Rider is incorporated into Mortgage as terms of the Loan Documents. The provisions of the Payment and Escrow Account Rider, together with the revocation of the waiver as to payment of escrow items as provided in Section 4. D. above, shall be effective as of the Modification Effective Date.

In Witness Whereof, the Lender and I have executed this Agreement.

**CitiMortgage Inc.**
Lender

By: _____

10|18|10
Date

_____(Seal)
Borrower: SHEILA R MUNOZ
7/27/2010
Date

_____(Seal)
Borrower: RAYMOND MUNOZ
7/27/2010
Date



EXHIBIT "D"



Hardest Hit Fund Approval Letter

Date: 3/17/14

Dear: Sheila Munoz & Raymond Munoz

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $50,000.00_____ in Hardest Hit Fund Principal Reduction (HHF-PR) funds. This amount has been calculated based on the current verified value of your principal residence of $133,800.00_____ and the amount of Unpaid Principal Balance received from your servicer of $223,567.39_____. HHF-PR funds will bring your current Unpaid Principal Balance amount down to the current verified value of your principal residence or a maximum of $50,000, whichever is less. Assistance may be adjusted based in the previous receipt of other Hardest Hit Fund Assistance.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-PR Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

For homeowners that have VA, FHA and USDA RD first mortgages: To receive incremental forgiveness of the HHF-PR loan, you must refinance your current first mortgage to achieve a lower monthly mortgage payment within 180 days of the HHF-PR loan closing. You must mail the proof of the refinance to:

> Hardest Hit Fund – PR Refinance
> Florida Housing Finance Corporation
> 227 N. Bronough Street, Suite 5000
> Tallahassee, FL 32301

Florida Hardest Hit Fund Approval Letter (05-2012)

Hardest Hit Fund – Principal Reduction
Approval Letter
Page 2

Please be aware that many servicers will not be able to recast loans that are not current.  It is
advised that until the HHF-PR funds have been applied to your account and the recast has been
completed, that you continue to make your first mortgage payments timely or the servicer may
choose to return all HHF-PR funds.

Please acknowledge your understanding of the amount and type of assistance that you have been
determined eligible to receive and the requirements that you must meet in order to receive
assistance under the program by signing below.  If at any time it is determined that you provided
inaccurate or false information, or withheld information, in making application for assistance
under the Florida Hardest Hit Fund, your participation in the program(s) will be automatically
terminated.

_____   Date: ___3/24/2014___
Borrower

_____   Date: ___3/24/2014___
Co-Borrower

Florida HHF-PR Approval Letter (10-2013)

FHFC Loan # ▓▓0580

# FLORIDA HOUSING FINANCE CORPORATION
## PRINCIPAL REDUCTION PROGRAM (PRP) - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### SUMMARY DISCLOSURE OF LOAN TERMS

The Principal Reduction Program (PRP) is a mortgage assistance program under the broader Florida Hardest Hit (HHF) Program administered by Florida Housing Finance Corporation (Lender). The PRP is designed to assist severely underwater (i.e., properties having a first mortgage loan-to-value ratio of 125% or more), low-to-moderate income homeowners (i.e., those with adjusted household income that does not exceed 140% Area Median Income) who have been consistently current in making the mortgage payments required under their primary (first) mortgage by providing HHF funds (PRP assistance) to reduce the amount of the outstanding principal loan balance of the mortgage to an amount equal to the current market value of the home (or as close thereto as the amount of PRP assistance available to the homeowner will permit). The homeowner's first mortgage loan must be recast in conjunction with the PRP assistance to provide a lower monthly first mortgage payment. Homeowners receiving PRP assistance who have VA, FHA and USDA RD first mortgages that are part of a Ginnie Mae certificate and thus not eligible for recast are excepted from the recast requirement; however, those homeowners are encouraged to refinance their first mortgages in those cases where the refinance will result in a lower monthly mortgage payment, and the costs and terms are otherwise financially advantageous to the homeowner. The PRP assistance will be provided by the Lender as an up-front, forgivable loan to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence. The amount of PRP assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to reduce the outstanding principal balance of the homeowner's first mortgage loan to an amount that is equal to the current market value of the property. The amount of PRP assistance for which a homeowner is eligible will be determined on a loan by loan basis, subject to a maximum of $50,000.00 in overall assistance from the Florida Hardest Hit (HHF) Program. The PRP Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's first mortgage loan for the following purposes only: To fund a one-time principal reduction modification of the Borrower's existing first mortgage loan. The PRP Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the PRP Loan. Following is a summary of the PRP Loan terms:

**Loan Amount:**   Up to $50,000.00.

**Interest Rate:**   0%

**Forgivable:**   For first mortgages that are recast with lower monthly mortgage payments in conjunction with the receipt of PRP assistance and those VA, FHA and USDA RD first mortgages that are refinanced with lower monthly mortgage payments within 180 days following receipt of PRP assistance, the PRP loan will be forgiven in five annual increments of 20% each over the first five years of the PRP loan term, subject to conditions in the Loan Documents. For first mortgages receiving PRP assistance that for any reason are not recast and those VA, FHA

and USDA RD first mortgages that are not refinanced within 180 days, the PRP loan will not be eligible for incremental forgiveness but, instead, will only be forgiven at the end of year five of the loan term, at which time the loan shall be forgiven in full, subject to conditions in the Loan Documents.

**Repayment:**     To the extent not forgiven, the PRP Loan must be repaid at the end of 10 years. In addition, the PRP Loan (or the balance not then forgiven) must be repaid if the homeowner sells or refinances the home at any time before the loan is completely forgiven, subject to certain conditions and exceptions as described in the Loan Documents.

**Mortgage:**     The PRP Loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**     No loan fees or closing costs associated with the PRP Loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR PRP LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

I/We acknowledge receipt of this Summary Disclosure of Loan Terms.

Date: 3/24/2014
**BORROWER**
Print name: Sheila Munoz

Date: 3/24/2014
**BORROWER**
Print name: Raymond Munoz

2020CA-002715-0000-00          Received in Polk 09/01/2020 08:37 PM

## PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### PRINCIPAL REDUCTION PROGRAM (PRP)

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:**          3/17/2014                         FHFC Loan # ███3580

**"Property"** means the Borrower's residence located at:

| 2829 Hickory Ridge Dr. | Lakeland | FL | 33813 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

**"First Mortgage Loan"** means the loan evidenced by the mortgage encumbering the Property dated        04/13/06        given by        Citicorp Trust Bank, FSB        to Sheila Munoz and Raymond Munoz   as recorded in Official Records Book   06737  , page  1850 , or under clerk's instrument #      2006098976      , of the public records of             Polk          County, Florida, as modified by modification agreement between the Borrower and the First Mortgage lender that is being executed and delivered contemporaneously with this Note.

1.   **BORROWER'S PROMISE TO PAY**

In return for a loan (the "PRP Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of          Fifty Thousand                         DOLLARS ($50,000.00      ), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329.  The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note.

2.   **THE LOAN; HARDEST HIT FUND PROGRAM**

The PRP Loan evidenced by this Note is made by the Lender to me under the Principal Reduction Program (PRP), one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The PRP Loan is made by the Lender to me and the PRP Loan proceeds will be advanced on my behalf exclusively to satisfy mortgage related indebtedness for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the PRP Loan.

3.    **INTEREST**

The interest on this Note shall be zero percent (0%) per annum.

4.    **REPAYMENT**

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is ten (10) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the PRP Loan if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

5.    **FORGIVENESS.**

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

6.    **BORROWER'S PAYMENT BEFORE PAYMENT IS DUE**

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

7.    **DEFAULT**

(A)    **Default.** I will be in default under this Note if: (i) I do not repay the PRP Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this PRP Loan; (iii) I make any representation or warranty in connection with the PRP Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the PRP Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

8.     **MORTGAGE**

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

9.     **BORROWER'S WAIVERS**

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

10.     **GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

11.     **RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

12.     **LIMITS ON PERSONAL LIABILITY**

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

(A)     Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)     The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

13.   **HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW**

(A)     The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)     If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)     No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)     This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

14.   **ATTACHMENTS**

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

**NOTICE TO BORROWER**
**DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.**
**ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**
**SIGN ORIGINAL ONLY.**

_____
**BORROWER**
**Print Name:**   Sheila Munoz

_____
**BORROWER**
**Print Name:**   Raymond Munoz

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

2020CA-002715-0000-00        Received in Polk 09/01/2020 08:37 PM

FHFC Loan # ▮0580

## RIDER TO PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### PRINCIPAL REDUCTION PROGRAM (PRP)

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.   **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.   **Principal Reduction Program (PRP).**      The Principal Reduction Program ("PRP") is one of the programs available to eligible homeowners under the Florida Housing Hardest Hit Fund (HHF) Program. The PRP is designed to assist severely underwater (i.e., properties having a first mortgage loan-to-value ratio of 125% or more), low-to-moderate income homeowners (i.e., those with adjusted household income that does not exceed 140% Area Median Income) who have been consistently current in making the mortgage payments required under their primary (first) mortgage by providing HHF funds (PRP assistance) to reduce the amount of the outstanding principal loan balance of the mortgage to an amount equal to the current market value of the home (or as close thereto as the amount of PRP assistance available to the homeowner will permit). The homeowner's first mortgage loan must be recast in conjunction with the PRP assistance to provide a lower monthly first mortgage payment. Homeowners receiving PRP assistance who have VA, FHA and USDA RD first mortgages that are part of a Ginnie Mae certificate and thus not eligible for recast are excepted from the recast requirement; however, those homeowners are encouraged to refinance their first mortgages in those cases where the refinance will result in a lower monthly mortgage payment, and the costs and terms are otherwise financially advantageous to the homeowner. The PRP assistance will be provided by the Lender as an up-front, forgivable loan to eligible homeowners secured by a second mortgage on the homeowner's principal residence. The amount of PRP assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to reduce the outstanding principal balance of the homeowner's first mortgage loan to an amount that is equal to the current market value of the property. Depending on the circumstances, homeowners may receive assistance from more than one HHF Program as long as the total combined assistance does not exceed $50,000.00. The principal amount of the Promissory Note (the "PRP Loan proceeds") represents the amount of the PRP assistance available to the Borrower.

C.   **Eligible Uses for Principal Reduction Program (PRP) Loan Proceeds.** The PRP Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's first mortgage loan for the following purposes only: To fund a one-time principal reduction modification of the Borrower's existing first mortgage loan.

2020CA-002715-0000-00        Received in Polk 09/01/2020 08:37 PM

D. **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower currently occupies and resides on the Property as the Borrower's principal residence, (iv) no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (v) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vi) the Borrower has not been convicted of a mortgage-related felony.

E. **Forgiveness. For first mortgages that are recast with lower monthly mortgage payments in conjunction with the receipt of PRP assistance and those VA, FHA and USDA RD first mortgages that are refinanced with lower monthly mortgage payments within 180 days following receipt of PRP assistance,** the PRP Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 20% each over a period of five (5) years following the date of the Note in the following manner: The Principal Amount under the Promissory Note will be reduced by an amount equal to 20% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date  following the date of the Promissory Note and by a reduction in that same amount on that same annual anniversary date each year thereafter until the Principal Amount is reduced to $0.00 Dollars, or until such time as the Property is sold or refinanced, whichever shall first occur. **For first mortgages receiving PRP assistance that for any reason are not recast, and those VA, FHA and USDA RD first mortgages that are not refinanced within 180 days, the PRP loan will not be eligible for incremental forgiveness but, instead, will only be forgiven at the end of year five of the loan term, at which time loan shall be forgiven in full, subject to conditions in the Loan Documents.** If the Property is sold or refinanced prior to the time that the PRP Loan is forgiven in full, the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this 24th day of *March*, 2014

_Sheila R. Munoz_
Borrower
Print name: Sheila Munoz

_Raymond Munoz_
Borrower
Print name: Raymond Munoz

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # ██0580

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### PRINCIPAL REDUCTION PROGRAM (PRP)

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $ 50,000.00 , TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

**THIS SUBORDINATE MORTGAGE** (this "Mortgage") is made this 17th day of _____ March _____, 20 14 , by _____ Sheila Munoz and Raymond Munoz _____ (herein, the "Borrower") whose address is _____ 2829 Hickory Ridge Dr., Lakeland, FL 33813 _____ (this address is the Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of _____ Fifty Thousand _____ DOLLARS ($ 50,000.00 ) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Principal Reduction Program (PRP) one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("PRP Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to satisfy or reduce mortgage related indebtedness for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the PRP.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is ten (10) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated _____ 04/13/06 _____ from _____ Citicorp Trust Bank, FSB _____ to _____ Sheila Munoz and Raymond Munoz _____ in the original principal amount of $ 211,448.59 _____ and recorded in OR Book _____ 06737 _____, Page _____ 1850 _____, or under clerk's instrument # _____ 2006098976 _____, of the public records of _____ Polk _____ County, Florida. The First Mortgage Loan is being modified contemporaneously with the closing of the PRP Loan to reflect the principal reduction resulting from the application of the PRP Loan proceeds toward the outstanding principal balance of the First Mortgage Loan. As used herein, the terms First Mortgage and First Mortgage Loan shall mean the First Mortgage and First Mortgage Loan, as modified by the modification agreement between the Borrower and the First Mortgage lender as described herein.

This Mortgage is subordinate to the First Mortgage.

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Polk _____, State of Florida (insert legal description):

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

**2020CA-002715-0000-00      Received in Polk 09/01/2020 08:37 PM**

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or "Home."

BORROWER COVENANTS represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

BORROWER FURTHER COVENANTS and agrees with Lender as follows:

1.      **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2.      **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3.      **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4.      **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.      **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6.      **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7.      **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8.      **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9.      **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.     **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.     **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and

2

references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12.   **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13.   **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.   **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15.   **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16.   **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17.   **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18.   **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19.   **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20.   **Special Provisions.**

    (a)   **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

    (b)   **Mortgage Not Assumable.** This mortgage cannot be assumed.

    (c)   **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale,

3

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

2020CA-002715-0000-00          Received in Polk 09/01/2020 08:37 PM

only to the extent there are sufficient net proceeds resulting from the sale. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan.  If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage: (i) where the First Mortgage is a VA, FHA or USDA RD mortgage that is being refinanced after receipt of PRP assistance and the refinance results in a lower monthly mortgage payment at the same or lower interest rate and the Borrower receives no cash back; (ii) where the First Mortgage is being refinanced for the purpose of reducing the interest rate and the Borrower is not receiving any cash as a result of the refinance; or (iii) where the First Mortgage is being modified provided the Borrower receives no cash as a result of the modification and the modification does not impose more burdensome terms on the Borrower or increase the indebtedness secured by the First Mortgage, and the modification will not otherwise violate or cause to be violated any requirements under the Lender's HHF or PRP Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d)      Limits on Personal Liability.  Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $ 50,000.00            , TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name:  Kaneesha Bennefield

Print name:  Mialsa Howard

_____
Borrower

Print name:  Sheila Munoz

Witnesses:

Print name:  Kaneesha Bennefield

Print name:  Mialsa Howard

_____
Borrower

Print name:  Raymond Munoz

STATE OF FLORIDA
COUNTY OF  Polk

The foregoing instrument was acknowledged before me this 24 day of March 20 16 by Raymond Munoz and Sheila Munoz. Such person(s) is (are) (check one) _____ personally known to me or  ✓  produced valid driver's license(s) as identification.

KATHY J ASTACIO
Notary Public - State of Florida
My Comm. Expires Aug 20, 2016
Commission # EE 220862

_____
Notary Public, State of Florida
Print Name:  Kathy Astacio
Commission No.: EE 220862
Commission Expires: Aug 20, 2016

4

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Principal Reduction Program (PRP) (New 09-2013)

EXHIBIT "E"

LAW OFFICE

# JAMES N. CHARLES

1420 CELEBRATION BLVD., SUITE 200
CELEBRATION, FLORIDA 34747

TELEPHONE (321) 559-1008
EMAIL- JIMMY@JIMMYCHARLES.NET
WEB SITE- JIMMYCHARLES.NET

May 6, 2019

CitiMortgage, Inc.
P.O. Box 6728
Sioux Falls, SD 57117-6728

Re:    Qualified Written Request and Notice of Error
        Borrowers:   Sheila and Raymond Munoz
        Account no.:   █████████████

To Whom It May Concern:

Please treat this letter as a "notice of error" and "request for information" under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36. This request is made on behalf of my clients, Sheila and Raymond Munoz, based on their dispute of the amount alleged to be due and owing contained in the [servicer's] notice of default. (My client's signed authorization is attached hereto.) Specifically, I am requesting a breakdown of the following information:

1.     The monthly principal and interest payment, and monthly escrow payment from the beginning of the loan to the present date.

2.     The total amount, separately listed and identified, for any unpaid principal, interest, escrow charges, and other charges due and owing as of the present date.

3.     The total amount paid by Sheila and Raymond Munoz on the mortgage account as of the present date.

4.     A schedule of all transactions credited or debited to the mortgage loan account, including any escrow account and any suspense account. This should include for each payment received from the beginning of the loan to the present date, the amount of the payment, the date received, the date posted to the account, how the payment was applied or credited (indicating the portion,

if any, applied or credited to principal, interest, escrow, suspense or other treatment), and the month to which the payment was applied. If interest is calculated using a daily accrual accounting method, indicate for each payment the number of days that lapsed from the prior payment application date.

5.  The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal fees, property inspection/preservation fees, force placed insurance charges, legal fees, bankruptcy/proof of claim fees, recoverable corporate advances, and other expenses or costs that have been charged and/or assessed to Sheila and Raymond Munoz's mortgage account from the beginning of the loan to the present date.

6.  The amount, payment date, purpose, and recipient of all escrow account items, including but not limited to taxes, water and sewer charges, and insurance premiums, charged and/or assessed to Sheila and Raymond Munoz's mortgage account from the beginning of the loan to the present date.

7.  A breakdown of the current escrow account payment showing how it was calculated and the reasons for any increase or decrease in the months prior to the present date. Indicate the date when the last escrow account analysis was conducted on the mortgage account.

8.  The balance in the escrow account as of the present date.

9.  The balance in any suspense account as of the present date and the reason why such funds were deposited in said account.

10.  The current interest rate on Sheila and Raymond Munoz's mortgage account.

11.  The transaction codes used by CitiMortgage's electronic servicing system that will assist in understanding the entries for transactions listed in the information provided in response to this request.

12.  Any notes created by personnel of CitiMortgage reflecting communications with my clients about their account from the beginning of the loan to the present date.

13.  A copy of all information contained in the servicing file for Sheila and Raymond Munoz's mortgage account from the beginning of the loan to the present date.

*Qualified Written Request and Notice of Error*
*May 6, 2019*
*Page 3*

FIRST NOTICE OF ERROR

In March 2014, Sheila and Raymond Munoz received through the Florida Hardest Hit Fund ("HHF") Principal Reduction Program ("PRP") $50,000 in Hardest Hit Fund Principal Reduction ("HHF-PR") funds which was paid to CitiMortgage for the purpose of paying down their outstanding principal loan balance and to recast the loan to provide Sheila and Raymond Munoz with a lower monthly mortgage payment.   See Para. B., page 1, RIDER TO PROMISSORY NOTE Florida Housing Finance Corporation Florida Hardest Hit Fund (HHF) Program Principal Reduction Program (PRP),FHFC Loan # 510580, dated March 24, 2014.

CitiMortgage erred by receiving the $50,000 HHF-PR funds and failing to re-amortize Sheila and Raymond Munoz's loan through the Maturity Date of June 24, 2036 provided in the HOME AFFORDABLE MODIFICATION AGREEMENT, between Sheila and Raymond Munoz and CitiMortgage.  See para. 3. A., signed by Sheila and Raymond Munoz on July 27, 2010 and by CitiMortgage on October 18, 2010.  Instead, CitiMortgage overcharged Sheila and Raymond Munoz each month for excessive amounts of principal and interest following its receipt of the HHF-PR funds.

CitiMortgage repeated this same error on or about February 29, 2016, when CitiMortgage applied an additional $5,000 pay-for-performance principal reduction to the loan, and then again when CitiMortgage applied another $1,000 pay-for-performance principal reduction on or about June 17, 2016.

To the extent that CitiMortgage overcharged Sheila and Raymond Munoz each month for excessive amounts of principal and interest following its receipt of the HHF-PR funds, Sheila and Raymond Munoz dispute such monthly overcharges for principal and interest and specifically request that their loan account be audited and re-amortized through the Maturity Date of June 24, 2036 to comply with the HAMP and HHF-PR agreements and corrected to delete such monthly overcharges and credit the amounts to Sheila and Raymond Munoz.

SECOND NOTICE OF ERROR

In addition to the monthly overcharges for principal and interest, beginning June 2017, CitiMortgage began misapplying the monthly payments made by Sheila and Raymond Munoz by not crediting the payments to principal, interest or escrow.  It appears CitiMortgage might have instead

placed the funds into a suspense account. As a result, from June 2017 through the present date, the monthly and total balances for principal, interest and escrow have been and continue to be erroneous.

To the extent that CitiMortgage misapplied the monthly payments made by Sheila and Raymond Munoz and that, as a result, the monthly and total balances for principal, interest and escrow have been and continue to be erroneous, Sheila and Raymond Munoz dispute such balances and specifically request that their loan account be audited and corrected to remove these errors.

THIRD NOTICE OF ERROR

There are several instances in which the monthly loan payments made by Sheila and Raymond Munoz to CitiMortgage are either missing even though received and deposited by CitiMortgage or were not timely or accurately credited to their loan account. For example, a payment made on January 5, 2018 shown in Sheila and Raymond Munoz's bank records to have been received and deposited by CitiMortgage is not shown in their loan account history.

Also, the mortgage statement dated April 17, 2018 erroneously showed a past unpaid amount of $1,649.73 even though Sheila and Raymond Munoz had made all of their monthly loan payments through the date of the statement. The statement shows an erroneous recent account history stating that payments for February 1, March 1 and April 1 were unpaid even though those payments were received and deposited by CitiMortgage on February 2, March 5 and April 3, respectively.

And, even though Sheila and Raymond Munoz again made their regular monthly mortgage payment in May 3, 2018, the mortgage statement dated May 17, 2018 erroneously showed a past unpaid amount of $2,119.64. This error continued to grow to $2,749.55 in the June 19, 2018 statement. CitiMortgage inexplicably stopped sending Sheila and Raymond Munoz their monthly mortgage statements after the June 2018 statement.

Out of the blue, Sheila and Raymond Munoz received a single mortgage statement dated January 17, 2019 that erroneously showed a past unpaid amount of $6,049.01.

To the extent that several of the monthly loan payments made by Sheila and Raymond Munoz to CitiMortgage are either missing even though received

and deposited by CitiMortgage or were not timely or accurately credited to their loan account, Sheila and Raymond Munoz dispute the accuracy of the account records of CitiMortgage and specifically request that their loan account be audited and corrected to remove these errors.

### FOURTH NOTICE OF ERROR

As a result of the misapplications by CitiMortgage, described above, of the monthly payments made by Sheila and Raymond Munoz, the balance of their escrow account is erroneous. Sheila and Raymond Munoz have made their escrow payments every month. Sheila and Raymond Munoz dispute such balance and specifically request that their loan escrow account be audited and corrected to correct the account balance.

### FIFTH NOTICE OF ERROR

CitiMortgage has recently wrongfully charged an inspection fee without any explanation. Sheila and Raymond Munoz dispute such inspection fee and specifically request that the fee be removed and their account credited for the charge.

Finally, please indicate the date when you began servicing Sheila and Raymond Munoz's mortgage account, and if you acquired the servicing rights in this mortgage account following a transfer of servicing from another servicer, state the name of the prior servicer and the effective date of the transfer of servicing to CitiMortage. Likewise, with CitiMortgage's recent transfer of servicing to Cenlar.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement Procedures Act (§ 2605(e)).

Thank you for your attention to this matter.

Sincerely,

James N. Charles

*Qualified Written Request and Notice of Error*
*May 6, 2019*
*Page 6*

## Authorization to Release Information

CitiMortgage, Inc.

Re:     Qualified Written Request and Notice of Error
         Borrowers:   Sheila and Raymond Munoz
         Account no.: ███████████

To Whom It May Concern:

    We are represented by the law office of James N. Charles, Esquire concerning the mortgage on our home referenced above. We hereby authorize you to release any and all information concerning our mortgage loan account to our attorney at their request. We also authorize you to discuss our case with our attorney.

    Thank you for your cooperation.

Very truly yours,


_____          _____
Sheila Munoz                                            Raymond Munoz

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT IN AND FOR POLK COUNTY, FLORIDA**

**SHEILA R. MUNOZ and RAYMOND MUNOZ,**

      **Plaintiffs,**

**v.**                                       **Case No. 2020-CA-002715**

**CITIMORTGAGE, INC.,**

      **Defendant.**

_____/

### NOTICE OF APPEARANCE AS COUNSEL FOR DEFENDANT AND DESIGNATION OF PRIMARY AND SECONDARY E-MAIL ADDRESSES

PLEASE TAKE NOTICE that Paul W. Ettori, Laura P. Guzman and the Akerman LLP law firm hereby enter their appearance on behalf of defendant CitiMortgage, Inc. and request all future correspondence, pleadings, etc., be sent to the undersigned counsels' designated primary and secondary email addresses noted below.

                        **AKERMAN LLP**

                        _/s/ Paul W. Ettori_
                        Paul W. Ettori, Esq.
                        Fla. Bar No.  0084150
                        Primary E-mail:  paul.ettori@akerman.com
                        Secondary E-mail:  elisa.waites@akerman.com
                        Laura P. Guzman, Esq.
                        Fla. Bar No. 112001
                        Primary E-mail: laura.guzman@akerman.com
                        Secondary E-mail: elisa.waites@akerman.com
                        420 South Orange Avenue, Suite 1200
                        Orlando, FL  32801
                        Phone:  407-423-4000
                        Fax:  407-843-6610

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 29, 2020, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court by using the Florida Courts eFiling Portal, and a true and correct copy of the foregoing has been furnished via e-mail to:

**James N. Charles, Esquire**, Law Office James N. Charles, 1420 Celebration Blvd., Suite 200, Celebration, FL 34747, Email- jimmy@jimmycharles.net.

*/s/ Paul W. Ettori*
Attorney

2