```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION

SHEILA R. MUNOZ, and
RAYMOND MUNOZ,

        Plaintiffs,
v.                              Case No. 8:20-cv-2311-VMC-AEP

CITIMORTGAGE, INC.,

        Defendant.
_____/
```

**ORDER**

This matter comes before the Court upon consideration of Defendant CitiMortgage, Inc.'s Motion to Dismiss Amended Complaint (Doc. # 31), filed on December 22, 2020. Plaintiffs Sheila and Raymond Munoz responded on January 12, 2021. (Doc. # 34). For the reasons set forth below, the Motion is granted.

**I.    Background**

Both the Court and parties are familiar with the facts of this Real Estate Settlement Procedures Act ("RESPA") case. Therefore, the Court need not reiterate them here. The Munozes initially filed this suit in state court on September 1, 2020. (Doc. # 1-2). CitiMortgage removed the case to this Court on October 1, 2020. (Doc. # 1). On November 23, 2020, the Court dismissed the complaint for failure to plausibly plead damages under RESPA, granting leave to amend. (Doc. # 24).

1

On December 14, 2020, the Munozes filed an amended complaint, which includes claims against CitiMortgage for various violations of Section 2605(e) of RESPA. (Doc. # 31). On December 22, 2020, CitiMortgage moved to dismiss the amended complaint. (Doc. # 31). The Munozes have responded (Doc. # 34), and the Motion is now ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to

accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

CitiMortgage moves to dismiss the amended complaint on a variety of bases. (Doc. # 31 at 7-17). But, because the Court finds that the Munozes still have not sufficiently alleged damages, it need only address this argument.

"RESPA establishes certain actions which must be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries." Tallent v. BAC Home Loans, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013). Because RESPA is a remedial consumer-protection statute, it should be "construed liberally in order to best serve [Congress's] intent." McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010) (citation omitted).

To state a claim for failure to respond to a qualified written request ("QWR") under RESPA, a plaintiff must sufficiently allege the following: "(1) [the defendant] is a

loan servicer; (2) [the defendant] received a QWR from [the plaintiff]; (3) the QWR relates to servicing of a mortgage loan; (4) [the defendant] failed to respond adequately; and (5) [the plaintiff] is entitled to actual or statutory damages." Porciello v. Bank of Am., N.A., No. 8:14-cv-1511-EAK-AEP, 2015 WL 899942, at *3 (M.D. Fla. Mar. 3, 2015).

"[D]amages are an essential element in pleading a RESPA claim." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016). "If a servicer fails to comply with RESPA, then the borrower may recover 'any actual damages to the borrower as a result of the failure,' as well as statutory damages 'in the case of a pattern of noncompliance.'" Hernandez v. J.P. Morgan Chase Bank, No. 14-24254-CIV-GOODMAN, 2016 WL 2889037, at *6 (S.D. Fla. May 16, 2016) (quoting 12 U.S.C. § 2605(f)(1)). Actual damages include pecuniary damages, such as "out-of-pocket expenses incurred dealing with [a] RESPA violation," "late fees," and "denial of credit or denial [of] access to . . . [a] credit line." Mintu v. Nationstar Mortg. LLC, No. 1:14-CV-3471-ODE-JCF, 2015 WL 11622469, at *4 (N.D. Ga. Apr. 13, 2015) (citation omitted), report and recommendation adopted, No. 1:14-CV-3471-0DE-JCF, 2015 WL 11622473 (N.D. Ga. May 6, 2015). Plaintiffs may also recover non-pecuniary damages, including

4

for emotional distress. Ranger v. Wells Fargo Bank N.A., 757 F. App'x 896, 902 (11th Cir. 2018). Importantly, to obtain actual damages, plaintiffs must "establish a causal link between" the alleged RESPA violation and their damages. Renfroe, 822 F.2d at 1246.

Here, the Munozes allege actual damages resulting from: (1) "CitiMortgage fail[ing] to refund the overcharges of principal, interest and improper late fees it collected from them"; (2) the "continuance of monthly overcharges in the monthly statements of the subsequent servicer which continued the errors created by CitiMortgage and false claim that the loan was in default and continued without abatement in the monthly statements of Cenlar"; (3) "time and money spent to send a QWR to Cenlar seeking correction of such errors, the cost of copying documents, postage fees, loss of work fees, travel expenses, interest and penalties on the loan," and (4) emotional distress. (Doc. # 29 at ¶ 103-06).

The Munozes' claim for emotional distress is based on their hope "that their formal QWR under RESPA would finally get CitiMortgage's attention and lead it to correct the account errors and resolve CitiMortgage's baseless claims that [the Munozes'] loan payments were past due and that their deferred principal was now due [eighteen] years earlier than

5

the term of their modified loan agreement." (Id. at ¶ 106). The Munozes further allege that had CitiMortgage "adequately responded to the QWR and reasonably investigated and corrected the account errors, all of their emotional distress would have been avoided, but its failure to do so caused [the] Munozes emotional and psychological trauma from the uncertainty over whether they would ever be able to resolve the errors and the fear they would lose their home was extremely emotionally distressful for them." (Id. at ¶ 107). Additionally, the Munozes allegedly suffered "embarrassment and emotional distress when they were turned down for financing due to the reduction of their credit score." (Id. at ¶ 108). The Court will address the sufficiency of each of these alleged actual damages in turn.

Regarding the first two categories of actual damages – those resulting from overcharges, interest, and late fees – the Munozes have failed to sufficiently show that these damages were caused by CitiMortgage's alleged RESPA violations. To the contrary, the facts indicate that these damages arose out of CitiMortgage's alleged failure to recast their loan back in 2014 (Doc. # 29 at ¶ 18-21), while the QWR was not sent to CitiMortgage until 2019. (Id. at ¶ 53). Not only is there a temporal issue here, but because RESPA only

6

requires servicers to respond to QWRs related to servicing, and not loan modification, damages resulting from an alleged failure to modify or recast a loan, causing a mortgagee to pay alleged overcharges or additional interest, cannot form the basis of a RESPA claim. See Lawson v. Ocwen Loan Servicing LLC, No. 1:14-CV-2426-AT-JSA, 2015 WL 11256550, at *12 (N.D. Ga. Jan. 26, 2015) ("Rather, as noted, servicers are required only to respond to inquiries relating to *servicing* of the loan." (emphasis in original)); Odum v. Specialized Loan Servicing, No. 1:15-CV-01949-MHC-JFK, 2016 WL 4582070, at *5 (N.D. Ga. July 5, 2016) ("Communications concerning loan modification do not constitute a QWR which must request information about servicing the loan in order to trigger a response."), report and recommendation adopted, No. 1:15-CV-1949-MHC, 2016 WL 4595940 (N.D. Ga. Aug. 1, 2016); Phillips v. Bank of Am. Corp., No. 5:10-CV-04561-EJD, 2011 WL 4844274, at *4 (N.D. Cal. Oct. 11, 2011) ("Additionally, it is unclear how Phillips could allege that damages that were listed in the May 17, 2010 letter resulted from Bank of America's failure to respond to that same letter."). The Court also notes that the amended complaint fails to provide any facts that the Munozes ever paid any late fees that CitiMortgage could have refunded. (Doc. # 29 at ¶¶ 38, 44) (noting that

7

the Munozes continued to pay only their regular monthly payments).

As to the third category of actual damages – those resulting from the Munozes sending a QWR to Cenlar – nowhere in the facts of the amended complaint do they allege that they sent such a QWR. (Doc. # 29). Indeed, the amended complaint discusses only a QWR sent to CitiMortgage in May 2019. (Id. at ¶ 53). And, no such QWR is attached to the amended complaint. See Lawson, 2015 WL 11256550, at *12 ("He has failed to allege the information requested in the QWR, nor has he attached a copy of the QWR to the Complaint, indicating that he requested information expressly about the servicing of the Loan."). Even if the QWR was included or if information contained within it was provided, the Court fails to see how CitiMortgage's alleged RESPA violations causally relate to damages resulting from a purported QWR sent to Cenlar. There are no facts alleged in the amended complaint that the QWR sent to Cenlar was sent after the one sent to CitiMortgage, or that it was sent because of CitiMortgage's alleged deficient responses. Accordingly, the Munozes have not sufficiently alleged any actual damages related to RESPA violations resulting from a QWR sent to Cenlar.

Finally, regarding the Munozes' alleged emotional

8

distress, the amended complaint still does not plausibly establish that such distress resulted from CitiMortgage's alleged RESPA violations. The emotional distress alleged is primarily based on the Munozes' hope that the QWR would resolve the issues related to CitiMortgage's failure to recast their mortgage. (Doc. # 29 at ¶ 106-07). The Munozes allege that the uncertainty of losing their home and not rectifying these errors was "extremely emotionally distressful for them." (Id. at ¶ 107). Additionally, the Munozes notes that they suffered emotional distress and embarrassment "when they were turned down for financing due to [a] reduction of their credit score." (Id. at ¶ 108).

Setting aside the Munozes' credit for a moment, like with the original complaint, this alleged emotional distress still is not sufficiently causally connected to CitiMortgage's alleged RESPA violations. The facts in the amended complaint demonstrate that the emotional distress resulted from CitiMortgage's decision to not recast their mortgage in 2014 – not their alleged deficient responses to a 2019 QWR. Stating in a conclusory fashion that the alleged RESPA violations caused the Munozes emotional distress – with no supporting factual basis – is insufficient.

Additionally, the Munozes' conclusory allegations that

9

CitiMortgage's alleged RESPA violations somehow caused a drop in their credit score, and further emotional distress, is unavailing. (Doc. # 29 at ¶ 97). The Munozes again provide no factual basis for this alleged drop in credit score or for any actions that CitiMortgage took that would result in such a drop. The Munozes provide no date for or information about any delinquencies that CitiMortgage might have reported. See Midouin v. Downey Sav. & Loan Ass'n, F.A., 834 F. Supp. 2d 95, 110-11 (E.D.N.Y. 2011) (dismissing a RESPA claim without prejudice because the plaintiff failed to provide sufficient information regarding the overdue payments allegedly reported to credit agencies, including when the delinquencies were reported to such agencies).

Therefore, the Munozes have provided no basis upon which the Court can infer that their emotional distress derived from CitiMortgage's inadequate responses to their May 2019 QWR. See Love v. Everbank, No. 1:12-CV-03662-CAP-JCF, 2013 WL 12061844, at *5-6 (N.D. Ga. Oct. 9, 2013) (finding a RESPA claim insufficiently pled where the plaintiff's emotional distress stemmed from actions taken by the defendant that were unrelated to the QWR), report and recommendation adopted, No. 1:12-CV-3662-CAP, 2013 WL 12063899 (N.D. Ga. Nov. 12, 2013); Selman v. CitiMortgage, Inc., No. 12-0441-

WS-B, 2013 WL 838193, at *9 (S.D. Ala. Mar. 5, 2013) ("[The complaint] states in generic terms that 'as a result of CitiMortgage's actions and inactions . . . plaintiffs have . . . suffered damage to their credit rating, mental anguish and mental distress. The . . . [complaint] does not connect any of these broad allegations (several of which predate the QWRs) to the alleged [Section] 2605(e) violation, or in any way suggest a direct relationship between the two. These allegations are insufficient to state a claim under RESPA." (citations omitted)). Accordingly, the complaint fails to plausibly plead actual damages.

Because "[u]nder Eleventh Circuit authority, a plaintiff who has suffered no actual damages for the failure to respond to a QWR cannot seek statutory damages for the same violation," the Munozes have again failed to allege statutory damages. Ross v. Nationstar Mortg., LLC, No. 1:17-cv-2098-ODE-JKL, 2017 WL 6994579, at *4 (N.D. Ga. Sept. 27, 2017), report and recommendation adopted, No. 1:17-CV-2098-ODE-JKL, 2017 WL 6997141 (N.D. Ga. Oct. 13, 2017).

Since the Munozes have failed to plead damages, which is an essential element of a Section 2605(e) claim, the entire claim fails. Renfroe, 822 F.3d at 1246. Therefore, the Motion is granted, and the amended complaint is dismissed without

11

prejudice. Although the Court previously dismissed the original complaint for this reason, the Court finds dismissal without prejudice appropriate. See <u>Paschette v. Wells Fargo Bank, N.A.</u>, No. 6:11-cv-442-GAP-GJK, 2011 WL 3962274, at *2 (M.D. Fla. Sept. 8, 2011) (providing the plaintiff with one last leave to amend although he had again failed to sufficiently allege the damages element of RESPA).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant CitiMortgage's Motion to Dismiss Amended Complaint (Doc. # 31) is **GRANTED.**

(2) The amended complaint is **DISMISSED** without prejudice.

(3) Sheila and Raymond Munoz's request for leave to file a second amended complaint is **GRANTED.** (Doc. # 34). The Munozes may file a second amended complaint by **February 25, 2021.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>11th</u> day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE