UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHEILA R. MUNOZ and RAYMOND MUNOZ,

    Plaintiffs,

v.   Case No.:   8:20-cv-02311-VMC-AEP

CITIMORTGAGE, INC.,

    Defendant.

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs, SHEILA R. MUNOZ and RAYMOND MUNOZ ("Munozes"), sue defendant, CITIMORTGAGE, INC. ("CitiMortgage") and allege as follows:

### General Allegations

1. This is an action for damages and ancillary declaratory relief for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.

2. The causes of action alleged herein arose in Polk County, Florida.

3. CitiMortgage is a Florida corporation that is authorized to transact business in the State of Florida.

4. CitiMortgage is a loan servicer of a federally related mortgage loan as defined in RESPA.

5. Munozes are borrowers under a promissory note and mortgage executed by them on or about April 13, 2006. True copies of the promissory note and mortgage are attached hereto as Exhibits "A-B," respectively.

6. The owner and holder of the promissory note and mortgage has apparently changed since the loan commenced. However, at all times material to this action, the owner and holder of the promissory note and mortgage authorized CitiMortgage to act as its agent to service the promissory note and mortgage.

7. The owner and holder of the promissory note and mortgage has transferred to CitiMortgage the rights and responsibilities to service the promissory note and mortgage and appointed CitiMortgage as its "Attorney-In-Fact" to execute and acknowledge in writing or otherwise all documents customarily and reasonably necessary and appropriate to service the note and mortgage and conferred CitiMortgage with full power and authority to do and perform all and every act and thing and whatever necessary to be done in relation to the promissory note and mortgage that the owner and holder of the promissory note and mortgage itself could do.

8. On or about July 27, 2010, Munozes and CitiMortgage entered into a Home Affordable Modification Agreement ("loan modification agreement") under the federal Home Affordable Modification Program ("HAMP"). A true copy of the modification agreement is attached hereto as Exhibit "C."

9. The provisions of the loan modification agreement provide that the agreement amends and supplements the promissory note and mortgage attached hereto as Exhibit "A-B."

10. Munozes made every monthly loan payment to CitiMortgage subsequent to their loan modification through the date CitiMortgage transferred servicing of the loan to Cenlar.

11. Munozes received a monthly statement dated March 19, 2018 from CitiMortgage that explained the monthly payment as follows: Principal $334.30; Interest -$0.16; Escrow $215; for a Total Payment Amount of $549.91.

12. The March 19, 2018 statement also provided that the outstanding Principal balance was $624.49 and that there were no past due amounts.

13. On March 26, 2018, Munozes mailed their payment of $549.91 to CitiMortgage.

14. Munozes received their next monthly statement dated April 17, 2018 from CitiMortgage that acknowledged receipt of Munozes' payment of $549.91, but inexplicably stated that the payment was "unapplied" to principal or escrow.

15. The April 17, 2018 statement also erroneously stated that the monthly payments of $549.91 due on February 1, 2018, March 1, 2018 and April 1, 2018 were unpaid with an erroneous statement of a $1,649.73 total unpaid amount.

16. In fact, Munozes had made all the monthly payments of $549.91 due on February 1, 2018, March 1, 2018 and April 1, 2018.

17. On April 23, 2018, Sheila Munoz called CitiMortgage and spoke with a representative who stated, "the statement cannot be correct" and "it is impossible to explain" and "we will be sending out a new statement."

18. On April 27, 2018, Munozes mailed their regular monthly payment of $549.91 to CitiMortgage.

19. On or about May 7, 2018, Munozes received a letter from CitiMortgage dated April 27, 2018 stating as follows:

> "We have completed a review of your account… …We are taking the appropriate steps to resolve the discrepancy that you brought to our attention. We may still need to contact you for additional information before we can consider the matter fully resolved."

20. However, Munozes never received the promised new and corrected statement.

21. Munozes received their next monthly statement dated May 17, 2018 from CitiMortgage that acknowledged receipt of Munozes' payment of $549.91, but inexplicably stated that the payment was "unapplied" to principal or escrow just as it had the prior month.

22. The May 17, 2018 statement also erroneously stated that there was now a $2,199.64 total unpaid amount.

23. On May 26, 2018, Munozes mailed their regular monthly payment of $549.91 to CitiMortgage.

24. Munozes received their next monthly statement dated June 19, 2018 from CitiMortgage that acknowledged receipt of Munozes' payment of $549.91, but again inexplicably stated that the payment was "unapplied" to principal or escrow just as it had the previous months.

25. The June 19, 2018 statement also erroneously stated that the monthly payments of $549.91 due on February 1, 2018, March 1, 2018, April 1, 2018, May 1, 2018 and June 1, 2018 were unpaid with an erroneous statement of a $2,749.55 total unpaid amount.

26. Since CitiMortgage was not crediting their monthly payments to their loan and because their payments had clearly exceeded the amount of remaining principal CitiMortgage provided in the statements, Munozes began in June 2018 sending monthly payments to CitiMortgage for monthly escrow funds due plus $1, which was $216.77 each month.

27. Munozes received their next monthly statement dated July 17, 2018 from CitiMortgage that acknowledged receipt of Munozes' payment of $216.77, but again inexplicably stated that the payment was "unapplied" to principal or escrow just as it had the previous months.

28. The July 17, 2018 statement again erroneously stated that there was a $2,749.55 total unpaid amount just as it had the prior month.

29. After July, Munozes did not receive another monthly statement from CitiMortgage until January 2019; however, Munozes continued sending monthly payments to CitiMortgage for monthly escrow funds due plus $1, which was $216.77 each month.

30. The January 17, 2019 statement again erroneously stated that there was a past unpaid amount and stated the total amount had increased to $6,049.01.

31. The January 17, 2019 statement was the final statement Munozes received from CitiMortgage.

32. Instead of resolving the statement errors, on or about March 18, 2019 CitiMortgage and Cenlar sent Munozes a notice that the servicing of their loan was being transferred to Cenlar beginning on April 1, 2019.

33. Due to the servicing and statement errors by CitiMortgage, the loan information that CitiMortgage transferred to Cenlar was erroneous and as a result Cenlar continued the errors without abatement in subsequent monthly statements.

34. On May 6, 2019, Munozes sent CitiMortgage a "qualified written request" ("QWR") letter as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), requesting information and documents relating to the servicing of their loan and notifying CitiMortgage of the errors in their monthly billing statements as well as the numerous misapplications of their monthly payments of principal, interest and escrow.

35. A true and correct copy of the QWR is attached hereto as Exhibit "D."

36. Munozes received an untimely and inadequate response to the QWR from CitiMortgage that consisted of a form response letter dated June 12, 2019, but postmarked on June 18, 2019. The response also enclosed a loan payment history, a list of some, but not all of the transaction codes referenced in the loan history, escrow account notices and the original note and mortgage.

37. The letter acknowledged that CitiMortgage received Munozes' QWR on May 7, 2019.

38. In the QWR, Munozes described the information requested from CitiMortgage in paragraphs numbered 1 through 13 of the letter.

39. In paragraph 2 of the QWR, Munozes requested a listing and itemization of the total amounts of principal, interest and escrow that was unpaid, due and owing as of the date of the letter.

40. In its response to paragraph 2, CitiMortgage stated that Munozes could get the requested information from Cenlar instead of providing the information it had available in its loan file.

41. CitiMortgage's response to paragraph 2 was inadequate because it is required by RESPA to provide the requested information from its loan file instead of passing the buck to Cenlar and because Cenlar claimed it did not receive all of this information.

42. In paragraph 5 of the QWR, Munozes requested detailed information relating to expenses, fees and charges that were assessed to their loan account.

43. In its response to paragraph 5 of the QWR, CitiMortgage merely stated a copy of the loan payment history was attached.

44. CitiMortgage's response to paragraph 5 was inadequate because the loan payment history only provides vague and cryptic descriptions of the items that are unascertainable to Munozes and RESPA requires CitiMortgage to provide the detailed information requested.

45. In paragraphs 12 and 13 of the QWR, Munozes requested all information contained in the loan file including notes reflecting communications between CitiMortgage representatives and Munozes.

46. In its response to paragraphs 12 and 13, CitiMortgage claimed "the information requested is confidential, proprietary or privileged.

47. CitiMortgage's response to paragraphs 12 and 13 was inadequate because it is required by RESPA and Regulation X to provide the requested information from its loan file.

48. CitiMortgage violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide Munozes with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 30 days after receipt of the Plaintiff's qualified written request.

49. In the QWR, Munozes specified five "notices of error" and outlined their reasons for believing that their account was not in default and requested that CitiMortgage correct the errors.

SECOND NOTICE OF ERROR- MISAPPLICATION OF MONTHLY PAYMENTS

50. In the "SECOND NOTICE OF ERROR" to CitiMortgage, Munozes explained their reasons for believing that CitiMortgage had misapplied their monthly payments and, as a result, the monthly and running account balances for principal, interest and escrow were erroneous and Munozes requested that CitiMortgage audit their loan account and correct the balances to remove the errors.

51. The rules implementing RESPA in 12 C.F.R. § 1024.35 (b) (2) provide that a servicer's "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law" is a "covered error" under RESPA.

52. As described above, all of the monthly statements Munozes received from CitiMortgage from March 2018 through the transfer of the servicing of their loan to Cenlar in April 2019 show that CitiMortgage failed to apply their monthly payments to principal, interest and escrow in accordance in accordance with the terms of their loan and the applicable law.

53. CitiMortgage responded to the Second Notice of Error that it researched the payment history and found no error in the application of the payments.

54. This response by CitiMortgage is inadequate and unreasonable because all of the monthly statements Munozes received from CitiMortgage from March 2018 through the transfer of the servicing of their loan to Cenlar in April 2019 show that CitiMortgage received Munozes' payments, but CitiMortgage inexplicitly failed to apply their monthly payments to principal, interest and escrow in accordance with the terms of their loan and the applicable law and CitiMortgage's own representatives admitted the errors.

55. If CitiMortgage had conducted an adequate and reasonable investigation of Munozes' second notice of error as required by RESPA, it would have acknowledged the clear errors in the monthly statements and that were also acknowledged by its own representatives and corrected the obvious errors revealed in the statements and refunded to Munozes the money they paid that was not applied to their loan.

56. As a result of CitiMortgages breach of RESPA by failing to conduct an adequate and reasonable investigation of Munozes' second notice of error, Munozes were damaged in the amount of $6,049.01 for the payments they made to CitiMortgage that it

failed to apply to their loan and that it claimed in the January 2019 statement was past due and owing.

### THIRD NOTICE OF ERROR- FAILURE TO CREDIT MONTLY PAYMENTS

57. In the "THIRD NOTICE OF ERROR," Munozes explained their reasons for believing that several of their monthly loan payments to CitiMortgage had been received and deposited by CitiMortgage, but had not been credited to their loan account at all or had not been timely or accurately credited to their loan account and Munozes requested that CitiMortgage audit their loan account and correct the balances to remove the errors.

58. The rules implementing RESPA in 12 C.F.R. § 1024.35 (b) (3) provide that a servicer's "[f]ailure to credit a payment to a borrower's mortgage loan as of the date of receipt" is a "covered error" under RESPA.

59. All of the monthly statements Munozes received from CitiMortgage from March 2018 through the transfer of the servicing of their loan to Cenlar in April 2019 show that Munozes made every monthly payment during that period, but that CitiMortgage continued to send statements showing those amounts were "Past Unpaid" amounts.

60. The January 17, 2019 statement, the final statement Munozes received from CitiMortgage, erroneously stated a "Past Unpaid Amount" of $6,049.01.

61. CitiMortgage responded to the Third Notice of Error as follows: "In regards to mis-applied payments, CitiMortgage has enclosed a Payment History. Please provide proof for the missing payments."

62. This response by CitiMortgage is inadequate and unreasonable because it shows CitiMortgage did no investigation, instead it essentially states, "Here is a payment history. You do the investigation yourself."

63. If CitiMortgage had conducted an adequate and reasonable investigation of Munozes' third notice of error as required by RESPA, it would have acknowledged that all of the monthly statements Munozes received from CitiMortgage from March 2018 through the transfer of the servicing of their loan to Cenlar in April 2019 show that CitiMortgage received Munozes' payments, but CitiMortgage failed to credit the payments to Munozes' loan and instead inexplicitly stated the amounts were "Past Due" and that were also acknowledged by its own representatives and corrected the obvious errors revealed in the statements and refunded to Munozes the money they paid that was not applied to their loan as of the date of its receipt of the payments.

64. As a result of CitiMortgage's breach of RESPA by failing to conduct an adequate and reasonable investigation of Munozes' third notice of error, Munozes were damaged in the amount of $6,049.01 for the payments they made to CitiMortgage that it failed to properly credit to their loan as of the date of its receipt of the payments and that it claimed in the January 2019 statement was past due and owing.

65. The payment history CitiMortgage provided in response to the QWR indicates that at least two other payments that Munozes sent to CitiMortgage that were

(11)

confirmed debited from their checking account by CitiMortgage were not credited to their loan as of the date of its receipt of the payments, $473.26 on April 4, 2017 and $498.79, for a total of $972.05 additional damages.

### FOURTH NOTICE OF ERROR- ESCROW ERRORS

66. In the "FOURTH NOTICE OF ERROR," Munozes explained their reasons for believing that because of the errors and misapplication of payments described above, the balance of their escrow funds held by CitiMortgage was erroneous and Munozes requested that CitiMortgage audit their loan account and correct the balances to remove the errors and properly credit all of their escrow payments.

67. All the monthly statements Munozes received from CitiMortgage from March 2018 through the transfer of the servicing of their loan to Cenlar in April 2019 show that CitiMortgage failed to apply their monthly payments to their loan escrow balance as it was required to due under RESPA.

68. The January 17, 2019 statement erroneously stated that Munozes' escrow balance was -$1,506.92.

69. If CitiMortgage had properly credited and applied Munozes' monthly payments for escrow, the escrow balance would have been $1,359.91.

70. CitiMortgage responded to the Fourth Notice of Error as follows: "In regards to mis-applied payments, CitiMortgage has enclosed a Payment History. Please provide proof for the missing payments."

71. This response by CitiMortgage is inadequate and unreasonable because it shows CitiMortgage did no investigation, instead it essentially states, "Here is a payment history. You do the investigation yourself."

72. If CitiMortgage had conducted an adequate and reasonable investigation of Munozes' fourth notice of error as required by RESPA, it would have corrected the obvious errors in Munozes' loan account and refunded to Munozes the money they paid that was not properly applied to their loan escrow balance.

73. As a result of CitiMortgage's breach of RESPA by failing to conduct an adequate and reasonable investigation of Munozes' fourth notice of error, Munozes were damaged in the amount of $1,359.91 for the escrow payments they made to CitiMortgage that it failed to properly credit to their loan escrow balance.

<u>FIFTH NOTICE OF ERROR- UNAUTHORIZED FEES</u>

74. In the "FIFTH NOTICE OF ERROR," Munozes explained their reasons for believing that because of the errors described, CitiMortgage had wrongfully charged monthly inspection fees and Munozes requested that CitiMortgage remove the fees and credit their account.

75. CitiMortgage responded to the Fifth Notice of Error as follows: "Please provide information as to the disputed inspection fee. Mortgage properties are routinely inspected during periods of default and bankruptcy."

76. This response by CitiMortgage is inadequate and unreasonable because it shows CitiMortgage did no investigation, instead it essentially states, "You do the investigation yourself."

(13)

77. The payment history provided by CitiMortgage in response to the QWR shows that CitiMortgage debited numerous additional unauthorized fees and expenses that were never disclosed to Munozes in the monthly loan statements. These fees are listed below as follows:

| Date | Amount | Description |
| --- | --- | --- |
| February 28, 2019 | $15 | Inspection fee |
| January 30, 2019 | $15 | Inspection fee |
| December 31, 2018 | $15 | Inspection fee |
| November 29, 2018 | $15 | Inspection fee |
| October 29, 2018 | $15 | Inspection fee |
| September 27, 2018 | $15 | Inspection fee |
| July 31, 2018 | $15 | Inspection fee |
| July 3, 2018 | $10 | Inspection fee |
| June 26, 2018 | $15 | Inspection fee |
| May 24, 2018 | $15 | Inspection fee |
| April 24, 2018 | $15 | Inspection fee |
| March 23, 2018 | $15 | Inspection fee |
| February 21, 2018 | $15 | Inspection fee |
| January 22, 2018 | $10 | Inspection fee |
| June 26, 2017 | $84 | Appraisal fee |
| May 2, 2017 | $84 | Appraisal fee |

|  | Total Unauthorized Fees | $368 |

78. If CitiMortgage had conducted an adequate and reasonable investigation of Munozes' fifth notice of error as required by RESPA, it would have acknowledged that all of the above fees were unauthorized and improper because on the dates of all these charges, Munozes loan was current and in good standing and was not in default because Munozes had made all of their monthly payments during the time period and CitiMortgage would have refunded Munozes the $368 charged for unauthorized and improper fees.

79. As a result of CitiMortgage's breach of RESPA by failing to conduct an adequate and reasonable investigation of Munozes' fifth notice of error, Munozes were damaged in the amount of $368.00 charged for unauthorized and improper fees.

80. In regard to each notice of error, CitiMortgage's response violates 12 C.F.R. § 1024.35 (B) by failing to provide Munozes with written notification of their right to request the documents relied upon by CitiMortgage to reach its determination.

81. In regard to each notice of error, CitiMortgage's response violates 12 U.S.C. § 2605 (k) (1) (C and E) by failing to take timely action to respond to Munozes' requests to correct errors relating to allocation of payments or other standard servicer's duties and failing to comply with any other obligation found by the Bureau of Consumer Financial Protection by regulation to be appropriate to carry out the consumer protection purposes of RESPA.

82. CitiMortgage's untimely and inadequate response violated RESPA, 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R §§ 1024.36(c) and 1024.35(d), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 5 days after receipt of the request and also violated 12 U.S.C. § 2605(e)(2) and 12 C.F.R § 1024.35(e), by failing to provide the response within 7 and 30 days after receipt.

83. CitiMortgage violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to conduct a reasonable investigation after receiving the qualified written request and by failing to make appropriate corrections to Munozes's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to them no later than 30 days after receipt of their QWR.

84. CitiMortgage violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by Munozes that were related to their qualified written request and as a result they have suffered a drop in credit rating and reduced access to credit.

85. As a result of CitiMortgage's falsely reporting to consumer credit agencies from May 2018 onward that Munozes' loan was in default, Munozes' credit score was deflated from the high 700s to 610 for Sheila Munoz and 557 for Raymond Munoz in October 2020, causing them to lose "access to credit."

86. Specifically, Munozes credit scores dropped about 60 points in August and September 2020 because of CitiMortgage's false reporting to consumer credit agencies.

87. After CitiMortgage failed to adequately respond to their QWR, Munozes were unable to refinance their home to pay off their CitiMortgage loan because with credit scores below 660, mainstream mortgage companies would either not approve a home loan or would only approve a loan with interest and fees that were much higher than Munozes could afford.

88. Following CitiMortgage's inadequate response to their QWR, Munozes considered their options to rent an apartment if they lost their home; however, when Sheila Munoz's inquired into apartment rentals, she was informed they needed at least a 650 credit score to be approved for a lease.

89. Following CitiMortgage's inadequate response to their QWR, Munozes were turned down for financing a new vehicle in August 2020 due to their diminished credit score.

90. Following CitiMortgage's inadequate response to their QWR, Munozes went through a time they needed some quick cash for a short time in January 2020 to pay some bills but were denied a personal loan they sought because of their diminished credit score.

91. Following CitiMortgage's inadequate response to their QWR, in August 2020 Munozes auto insurance and homeowner's insurance premiums both were raised in major part due to their diminished credit scores.

92. As a result of the RESPA violations alleged above, in August 2020 Munozes were required to file a RESPA complaint against the successor servicer, Cenlar, seeking correction of the loan account errors that it was reporting as a result of the erroneous account information it received from CitiMortgage and Munozes have suffered actual damages including their time and money spent in the lawsuit against Cenlar including the costs and legal fees in the lawsuit.

93. As a result of CitiMortgage's failure to adequately respond to the QWR and the RESPA violations alleged above, Munozes have suffered actual damages of emotional distress.

94. Munozes had a reasonable expectation that CitiMortgage would follow the requirements of RESPA and conduct a reasonable and adequate investigation and then respond to the QWR with a response acknowledging and correcting the obvious errors in their loan account.

95. If CitiMortgage had adequately responded to the QWR and reasonably investigated and corrected the account errors, their emotional distress would have been avoided, but its failure to do so caused Munozes emotional and psychological trauma from the uncertainty over whether they would ever be able to resolve the errors and the fear they would lose their home was extremely emotionally distressful for them.

96. Following CitiMortgage's inadequate response to their QWR, Munozes suffered embarrassment and emotional distress when they were turned down for financing due to the reduction of their credit score.

97. CitiMortgage has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA and Munozes may recover statutory damages pursuant to 12 U.S.C. § 2605 (f) (1) (B).

98. CitiMortgage violations of RESPA in this instance are a result of a standard corporate policy and routine for operating in flagrant disregard for their servicing duties under RESPA and Regulation X.

99. CitiMortgage has failed to comply with its servicing duties under RESPA to adequately respond to a QWR or failed to respond at all to borrowers in Washington in June 2017, Missouri and Colorado in April 2011, Virginia in April 2013, Georgia and Kansas in June 2012 and Texas in December 2010.

100. The Consumer Financial Protection Bureau charged CitiMortgage with systematic violation of RESPA and Regulation X and CitiMortgage agreed to a consent order against it in 2017-CFPB-0005 on January 23, 2017.  The misconduct included ignoring notices of error sent by borrowers.

101. Munozes are obligated to pay their attorney a reasonable fee for his services and are entitled to recover their attorney's fees pursuant to  12 U.S.C. § 2605 (f) (3).

102. Munozes have performed all conditions precedent to bringing this action or any conditions not performed were waived by the acts and conduct of CitiMortgage and CitiMortgage is barred from enforcing any such conditions by estoppel or laches.

103. In addition to the recovery of their actual and statutory damages from CitiMortgage, Munozes will need declaratory relief pursuant to this Court's inherent

power to issue declaratory relief to require CitiMortgage to correct the erroneous account information it transferred to the subsequent servicer, Cenlar.

WHEREFORE, Munozes request award of judgment for actual and statutory damages, interest, attorney's fees and costs against CitiMortgage and an ancillary declaratory judgment that CitiMortgage must provide the requested loan information and correct the errors and a trial by jury on all issues so triable.

I CERTIFY that on March 10, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ James N. Charles
JAMES N. CHARLES, ESQUIRE
Florida Bar #611840
1420 Celebration Blvd., Suite 200
Celebration, FL 34747
Telephone (321) 559-1008
Email- jimmy@jimmycharles.net
COUNSEL FOR PLAINTIFFS