UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHEILA R. MUNOZ, and
RAYMOND MUNOZ,

        Plaintiffs,

v.                                    Case No. 8:20-cv-2311-VMC-AEP

CITIMORTGAGE, INC.,

        Defendant.
_____/

**ORDER**

        This matter comes before the Court upon consideration of
Defendant CitiMortgage, Inc.'s Motion for Summary Judgment
(Doc. # 54), filed on June 30, 2021, and Plaintiffs Sheila
and Raymond Munozes' Motion for Partial Summary Judgment,
filed on July 1, 2021 (Doc. # 57). Both Motions have been
fully briefed. (Doc. ## 60, 62, 63, 65). For the reasons set
forth below, CitiMortgage's Motion is granted and the
Munozes' Motion is denied.

I.    **Background**

        In April 2006, the Munozes executed a promissory note
and mortgage on their property. (Doc. # 45-1 at 2).
CitiMortgage serviced the Munozes' mortgage from July 2008
through April 2019. (Doc. # 56-1 at 14). In April 2019, Cenlar
began servicing the Munozes' mortgage. (Doc. # 56 at 3).

In July 2010, the Munozes modified the terms of their loan under the federal government's Home Affordable Modification Program. (Doc. # 45-1 at 28—33).

The Munozes argue that beginning in 2017, CitiMortgage misapplied payments, failed to apply payments to principal or escrow, and charged improper fees. (Doc. # 45-1 at 39—41). However, the Munozes admitted that they began making partial payments in June 2018. (Doc. # 45 at 5). The terms of the CitiMortgage loan agreement stipulated that any payments received from a borrower were first applied to interest, then to principal, then to escrow. (Doc. # 45-1 at 14).

Because of perceived errors in CitiMortgage's servicing of the Munozes' mortgage, the Munozes sent CitiMortgage a letter on May 6, 2019. (Id. at 37—42). CitiMortgage received this letter on May 7, 2019. (Doc. # 56-1 at 13). The Munozes made thirteen requests for information and alleged five notices of error in the letter. (Doc. # 45-1 at 37—42).

CitiMortgage acknowledged receipt of the Munozes' letter on May 15, 2019. (Doc. # 56-1 at 9). CitiMortgage replied to the letter on June 12, 2019. (Id. at 13). In its reply, CitiMortgage provided the Munozes with information in response to the requests for information and a written reply in response to each notice of error. (Id. at 14). CitiMortgage

also sent the Munozes documentation, including payment and transaction histories. (Doc. # 45 at 6). With regard to notices of error three through five, CitiMortgage asked the Munozes to provide more information to help it identify the alleged error. (Doc. # 56-1 at 14). CitiMortgage's response contained contact information, including a telephone number, for a point of contact going forward. (Id.).

The Munozes allege that their letter was a Qualified Written Request ("QWR") under Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA."). (Doc. # 57 at 1—2). They allege that CitiMortgage provided an untimely and inadequate response to their QWR, which caused them actual and statutory damages. (Doc. # 60 at 15). In their second amended complaint, the Munozes claimed that CitiMortgage's responses to paragraphs 2, 5, 12, and 13 of the Munozes' May 6 letter were inadequate, as well as CitiMortgage's responses to the second through fifth notices of error. (Doc. # 45 at 7—8, 9, 11, 13, 15). The Munozes continue to dispute CitiMortgage's responses to those requests for information and notices of error at summary judgment. (Doc. # 60 at 8—10).

After filing two complaints that this Court dismissed, the Munozes filed a second amended complaint on March 10,

2021. (Doc. # 45). On June 30, 2021, CitiMortgage moved for summary judgment. (Doc. # 54). The Munozes' moved for partial summary judgment on July 1, 2021. (Doc. # 57). Both parties responded. (Doc. ## 60; 62). Both parties replied. (Doc. ## 63; 65). The motions are now ripe for review.

## II. <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247—48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are

no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034

(11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538–39 (5th Cir. 2004); <u>see</u> <u>also</u> <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## III. <u>**Analysis**</u>

The Court will begin by addressing CitiMortgage's Motion, followed by the Munozes' Motion.

### A. <u>**CitiMortgage's Motion for Summary Judgment**</u>

The Munozes broadly attempt to recover from CitiMortgage "for failure to adequately respond to the[] Qualified Written Request ("QWR") under Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA.")." (Doc. # 60 at 3). In their second amended complaint, the Munozes claimed that

CitiMortgage violated Section 2605(e)(2)(C) "by failing to provide [them] with the information and documents requested, or an explanation why the information sought was unavailable, no later than 30 days after receipt of the Plaintiff's qualified written request." (Doc. # 45 at 8). The Munozes specified that CitiMortgage's response to paragraphs 2, 5, 12, and 13 of the Munozes' May 6 letter was inadequate. (Id. at 7—8). The Munozes additionally argued that CitiMortgage failed to "adequately and reasonably" investigate four of the five notices of error the Munozes included in their letter. (Id. at 9, 11, 13, 15). The Munozes maintain these arguments at summary judgment. (Doc. # 60 at 7—11).

In its Motion for Summary Judgment, CitiMortgage argues that the Munozes' RESPA claims fail because its response to the Munozes' "vague and inchoate" inquiries and notices of error was adequate. (Doc. # 54 at 23—24). CitiMortgage also argues that the Munozes' damages claims are unsupported. (Id. at 24).

"To succeed on a claim under § 2605(e), Plaintiffs must show: (1) that Defendants are servicers; (2) that Defendants received a qualified written request ("QWR") from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendants failed to respond adequately; and

7

(5) that Plaintiffs are entitled to actual or statutory damages." Echeverria v. BAC Home Loans Servicing, LP, 900 F. Supp. 2d 1299, 1305—06 (M.D. Fla. 2012), aff'd, 523 F. App'x 675 (11th Cir. 2013).

CitiMortgage admits that it serviced the Munozes' loan. (Doc. # 54 at 2). However, the parties dispute all other elements. (Id. at 4—23).

### 1. **CitiMortgage Received a QWR from the Munozes**

CitiMortgage argues that the Munozes' May 6, 2019 letter was a generic request for information, and not a QWR. (Id. at 4—8).

A QWR "shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "Section 2605(e)(1)(B)(ii) is written in the disjunctive . . . a communication can satisfy RESPA by 'includ[ing] a statement of the reasons . . . that the account is in error,' *or* by 'provid[ing] sufficient detail to the

8

servicer regarding other information sought by the borrower.'" <u>Gnipp v. Bank of Am. N.A.</u>, 2:15-cv-99-JES-CM, 2016 WL 4810541, at *5 (M.D. Fla. Sept. 14, 2016) (citations omitted) (emphasis added). "A qualified written request (or QWR) may come in the form of a Notice of Error or a Request for Information." <u>E.g. St. Claire v. Ditech Fin., LLC</u>, 1:17-CV-3370-AT-JFK, 2018 WL 4850127, at *3 (N.D. Ga. Sept. 21, 2018).

Drawing all reasonable inferences in the Munozes' favor, their May 6 letter was a QWR. The letter identified the Munozes as the borrowers and disclosed their account number. (Doc. # 45-1 at 37). Each of the five notices of error included in the letter stated a reason, albeit a general and unsupported reason, that the Munozes believed their account was in error. (<u>Id.</u> at 39—41). Under the terms of Section 2605(e)(1)(B), the Munozes' letter was therefore a QWR.

## 2. **The QWR Related to Servicing of a Mortgage Loan**

Furthermore, the Munozes letter related to the servicing of their mortgage loan.

Pursuant to Regulation X, which amended RESPA's mortgage servicing rules, inquiries or notices of error related to servicing loans include "a borrower's request to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01 (2013). "These standard servicer duties . . . include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." Id.

In the Munozes' letter, they asked for information about their mortgage, and they notified CitiMortgage of several alleged errors related to their mortgage. (Doc. # 45-1 at 37—42). The Munozes asked for information about their payments to CitiMortgage, the allocation of their payments, and fees posted to their account. (Id. at 37—38). All of this related to the servicing of their loan. Furthermore, the Munozes' notified CitiMortgage of CitiMortgage's alleged misapplication of monthly payments, missing payments, and erroneous fees. (Id. at 39—41). Once again, these notices of

error related to the Munozes' loan with CitiMortgage.
Therefore, the QWR related to the servicing of a mortgage
loan.

### 3. **CitiMortgage Provided an Adequate Response**

The Munozes base their claim on the purported inadequacy
of CitiMortgage's response to their QWR. (Doc. # 45).
CitiMortgage argues that it responded adequately to each of
the Munozes' requests for information and notices of error,
and that the Munozes' allegations are entirely unsupported by
the record. (Doc. # 54 at 1).

"Once a servicer receives a borrower's QWR, it must
'provide a written response acknowledging receipt of the
correspondence within 5 [business] days.' Then, within 30
business days, the servicer must (1) correct the asserted
error; (2) explain why it believes the account isn't in error;
(3) provide the requested information; or (4) explain why the
requested information is unavailable." Ranger v. Wells Fargo
Bank N.A., 757 F. App'x 896 (11th Cir. 2018) (citing §§
2605(e)(1)—(e)(2)).

First, it is undisputed that CitiMortgage acknowledged
receipt of the Munozes' QWR after five business days had
passed. (Doc. # 54 at 3 n.2). The Munozes sent the QWR on May
6, 2019. (Doc. # 45-1 at 37). CitiMortgage received it on May

11

7. (Doc. # 56-1 at 13). Five business days after May 7 was May 14. Yet CitiMortgage did not respond to the Munozes until May 15. (Id. at 9). Although CitiMortgage acknowledged receipt of the QWR one day late, this alone does not establish an inadequate response.

In order for a delay in acknowledging receipt of a QWR to form the basis of a viable claim, the delay must have caused a concrete injury to the claimant. Maldonado v. Ocwen Loan Servicing, LLC, No. 18-62037-CIV, 2018 WL 6427682, at *7 (S.D. Fla. Dec. 7, 2018) (citing Chadee v. Ocwen Loan Servicing, LLC, 243 F. Supp. 3d 1283, 1289—90 (M.D. Fla. 2017. The plaintiff must have suffered compensable damages from the loan servicer's delay. Chadee, 243 F. Supp. 3d at 1289—90.

Additionally, the Court can conclude that a Defendant has not violated RESPA, even with a delay in acknowledgement of a QWR. Whittaker v. Wells Fargo Bank, N.A., No. 6:12-cv-98-JA-GJK, 2014 WL 5426497, at *6 (M.D. Fla. Oct. 23, 2014). In a case out of the Middle District of Florida, the mortgage servicer sent a response to a QWR one day after the RESPA deadline. Id. The Court acknowledged that "the first written response" by the mortgage servicer "was one business day too late" and the mortgage servicer "did not acknowledge receipt of the [] QWR within the time period set forth in RESPA." Id.

12

However, the Court "conclude[d]" that the mortgage servicer's acknowledgement, although one day late, was "a sufficient acknowledgement of Plaintiff's QWR." Id.

Here, the Munozes do not claim to have suffered any injury from CitiMortgage's one-day delay in their second amended complaint or response to CitiMortgage's Motion for Summary Judgment. In the second amended complaint, the Munozes simply asserted that "CitiMortgage's untimely and inadequate response violated RESPA, 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R §§ 1024.36(c) and 1024.35(d), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 5 days after receipt of the request." (Doc. # 45 at 16). The Munozes have offered no evidence subsequently showing an impact from a one-day delay. The one-day delay is insufficient to establish a RESPA violation.

Next, CitiMortgage complied with the thirty-day deadline to respond substantively to the issues raised in the QWR. CitiMortgage received the Munozes' QWR on May 7, 2019. (Doc. # 56-1 at 13). Thirty business days after May 7, excluding Memorial Day, was June 19. CitiMortgage responded to the Munozes' QWR on June 12, 2019. (Id. at 12).

Because CitiMortgage complied with the thirty-day

response deadline, the issue becomes whether CitiMortgage's response was adequate under the statute. Regarding requests for information, mortgage servicers must "provide the borrower with a written explanation or clarification that includes--(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(C).

Regarding notices of error, "a servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir. 2016).

The servicer may also ask for more information if the QWR fails to sufficiently identify the error. RESPA, as amended by Regulation X, allows servicers to request information from borrowers "in connection with the investigation of an asserted error." 12 C.F.R. § 1024.35(e)(2). The servicer may not "[r]equire a borrower to provide such information as a condition of investigating an

14

asserted error" or "[d]etermine that no error occurred because the borrower failed to provide any requested information without conducting a reasonable investigation." Id. "A servicer's obligation is to 'fairly meet the substance of the QWR without being compelled to guess what the [borrowers] believed were the errors in the account or to dream-up and refute hypothetical reasons for the [borrowers'] vague discontent.'" Russell v. Nationstar Mortg., LLC, No. 1461977CIVBLOOMVALLE, 2015 WL 5819663, at *7 (S.D. Fla. Oct. 6, 2015) (citations omitted).

Importantly, RESPA "does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons." Whittaker, 2014 WL 5426497, at *8. The mortgage servicer's response need not answer whether the servicer's actions "were the appropriate actions under the terms of the mortgage." Id. Instead, it only matters whether the letter from the mortgage servicer "complied with RESPA." Id.

Here, the Munozes argue that CitiMortgage's responses to four requests for information and four notices of error were inadequate. (Doc. ## 45 at 7—9, 11, 13, 15; 60 at 8—10). The Munozes took issue with CitiMortgage's responses to the requests for information numbered 2, 5, 12, and 13 in their

May 6 letter. (Id.). They contested CitiMortgage's responses to the second through fifth notices of error. (Id.). CitiMortgage responded to all requests for information and notices of error in one letter, and included the name, address, and telephone number of a contact person in that letter. (Doc. # 56-1 at 14—15).

In the first disputed request for information, the Munozes asked for "[t]he total amount, separately listed and identified, for any unpaid principal, interest, escrow charges, and other charges due and owing as of the present date." (Doc. # 45-1 at 37). CitiMortgage replied: "Servicing of this account transferred to CENLAR servicing on April 1, 2019. CENLAR servicing has the current amounts due." (Doc. # 56-1 at 13). In their second amended complaint, the Munozes argued that this response was inadequate "because it is required by RESPA to provide the requested information from its loan file instead of passing the buck to Cenlar and because Cenlar claimed it did not receive all of this information." (Doc. # 45 at 7). The Munozes continue to dispute the adequacy of this answer at summary judgment. (Doc. # 60 at 8). However, the Munozes provided no hint as to which section of RESPA this response violated. Furthermore, the request for information, sent May 6, 2019,  related to

amounts "due and owing as of the present date." (Doc. # 45-1 at 37). As of April 1, 2019, CitiMortgage no longer serviced the Munozes' loan. (Doc. # 56 at 5). Cenlar did. (Id.). Therefore, although the Munozes might not have liked the answer they received, it was appropriate under the circumstances, taking all evidence in the Munozes' favor and making all reasonable inferences in their favor.

The second disputed request for information asked for: "The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal fees, property inspection/preservation fees, force placed insurance charges, legal fees, bankruptcy/proof of claim fees, recoverable corporate advances, and other expenses or costs that have been charged and/or assessed to Sheila and Raymond Munoz's mortgage account from the beginning of the loan to the present date." (Doc. # 45-1 at 38). CitiMortgage responded by sending the Munozes a copy of their payment history. (Doc. # 56-1 at 13). In the second amended complaint, the Munozes took issue with this because "the loan payment history only provides vague and cryptic descriptions of the items that are unascertainable to Munozes and RESPA requires CitiMortgage to provide the detailed information requested." (Doc. # 45 at 7). At summary judgment,

the Munozes merely argue that the Munozes sent CitiMortgage
a valid request for information, and CitiMortgage owed the
Munozes a sufficient response. (Doc. # 60 at 10). The Munozes
thusly did not dispute that CitiMortgage turned over the
requested information, they just contended that the
information was "vague and cryptic." But RESPA does not
penalize the mortgage servicer for providing information that
a borrower has difficulty understanding, as long as the
servicer provided the information requested by the borrower.
12 U.S.C. § 2605(e)(2)(C).

In the last two disputed requests for information, the
Munozes asked for any notes created by CitiMortgage
reflecting communication with the Munozes, and any
information contained in the servicing file for the Munozes.
(Doc. # 45-1 at 39). CitiMortgage responded by saying that
"[t]he information requested is confidential, proprietary, or
privileged." (Doc. # 56-1 at 13). The Munozes, in their second
amended complaint, argued that these responses were
inadequate "because it is required by RESPA and Regulation X
to provide the requested information from its loan file."
(Doc. # 45 at 8). CitiMortgage responded that "[t]hese two
requests clearly exceed, by any measure, the scope of a valid
request for information under 12 C.F.R. § 1024.36." (Doc. #

54 at 7). At summary judgment, the Munozes argue that CitiMortgage's response is "without merit." (Doc. # 60 at 10).

RESPA requires servicers to provide the requested information or "an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C). CitiMortgage provided an explanation as to why it would not turn over the requested information when it explained that the information was "confidential, proprietary, or privileged." (Doc. # 56-1 at 13). Furthermore, the Munozes have offered no evidence countering CitiMortgage's argument that these requests for information exceeded the scope of 12 C.F.R. § 1024.36. (Doc. # 60 at 10).

Moving onto the contested notices of error, the Munozes objected to CitiMortgage's response to the Munozes' second notice of error. (Doc. ## 45 at 8; 60 at 10—11). In the second notice of error, the Munozes wrote that: "beginning June 2017, CitiMortgage began misapplying the monthly payments made by Sheila and Raymond Munoz by not crediting the payments to principal, interest or escrow. It appears CitiMortgage might have instead placed the funds into a suspense account." (Doc. # 45-1 at 39—40). CitiMortgage replied that it had

"researched" the payment history and had found "no [e]rrors in the application of the stated payments." (Doc. # 56-1 at 14).

Because CitiMortgage concluded that there was no error, a RESPA violation did not occur if it based its conclusion upon an investigation and then explained that conclusion in writing. Renfroe, 822 F.3d at 1244. CitiMortgage met that burden by explaining that it had researched the Munozes' payment history in its letter to the Munozes.

Furthermore, the Munozes did not dispute that CitiMortgage researched the error and explained its findings in writing. Instead, the Munozes argued that because CitiMortgage did not fix the "clear" error, the investigation must have been inadequate and unreasonable. (Doc. ## 45 at 9; 57 at 19). This argument necessarily fails. In a similar RESPA case, the court granted summary judgment for the mortgage servicer when "[plaintiff's] contention that [the servicer] failed to conduct a reasonable investigation is premised entirely on her disagreement with [the servicer's] determination that no error occurred." Finster v. U.S. Bank Nat'l Ass'n, 245 F. Supp. 3d 1304, 1316 (M.D. Fla. 2017), aff'd, 723 F. App'x 877 (11th Cir. 2018). Such is the case here.

In the Munozes' third, fourth, and fifth notices of error, the Munozes contended that CitiMortgage misapplied the Munozes' loan payments, which resulted in an "erroneous" escrow account balance, and that CitiMortgage charged a fee without any explanation. (Doc. # 45-1 at 40—41). With each notice of error, CitiMortgage asked the Munozes to provide more information. (Doc. # 56-1 at 14).

Regarding these notices of error, the Munozes generally contend at summary judgment that "CitiMortgage interjects into its arguments numerous assertions that are more unsupported assertions of CitiMortgage's attitude of disdain for its borrowers, Munozes, than statements of fact." (Doc. # 60 at 10). In their second amended complaint, however, the Munozes objected to two specific aspects of CitiMortgage's responses. (Doc. # 45 at 11—15). First, they argued that if CitiMortgage had conducted an adequate and reasonable investigation, it would have recognized and corrected the errors. (Id.). Second, the Munozes contended that they should not have to investigate themselves. (Id.). The Munozes' first argument fails for the same reason their argument regarding the second notice of error failed. A plaintiff's contention that a servicer failed to conduct a reasonable investigation that is premised solely on his disagreement with the outcome

21

of the investigation is meritless. <u>Finster</u>, 245 F. Supp. 3d at 1316.

The second argument fails because servicers may request clarifying information when QWRs fail to sufficiently identify the alleged error. 12 C.F.R. § 1024.35(e)(2); <u>Russell</u>, 2015 WL 5819663, at *7. Here, the third, fourth, and fifth notices of error identified payment misapplication, incorrect balances, and improper fees. (Doc. # 45-1 at 39—41). But the QWR contained insufficient detail as to which payments had been misapplied and fees charged to allow CitiMortgage to identify and investigate the errors. Drawing all reasonable inferences in favor of the Munozes, CitiMortgage did not act improperly by asking the Munozes for more information because a servicer does not need to "guess what the [borrowers] believed were the errors in the account or to dream-up and refute hypothetical reasons for the [borrowers'] vague discontent.'" <u>Russell</u>, 2015 WL 5819663, at *7.

Summary judgment is granted in favor of CitiMortgage.

### 4. **<u>The Munozes Failed to Establish Damages</u>**

There is no genuine issue of material fact as to whether CitiMortgage adequately responded to the Munozes' QWR. But even if there were, summary judgment would still be

appropriate because there is no genuine issue of material
fact as to damages.

"[D]amages are an essential element in pleading a RESPA
claim." Renfroe, 822 F.3d AT 1246. "If a servicer fails to
comply with RESPA, then the borrower may recover 'any actual
damages to the borrower as a result of the failure,' as well
as statutory damages 'in the case of a pattern of
noncompliance.'" Hernandez v. J.P. Morgan Chase Bank, No. 14-
24254-CIV-GOODMAN, 2016 WL 2889037, at *6 (S.D. Fla. May 16,
2016) (quoting 12 U.S.C. § 2605(f)(1)). Actual damages
include pecuniary damages, such as "out-of-pocket expenses
incurred dealing with [a] RESPA violation," "late fees," and
"denial of credit or denial [of] access to . . . [a] credit
line." Mintu v. Nationstar Mortg. LLC, No. 1:14-CV-3471-ODE-
JCF, 2015 WL 11622469, at *4 (N.D. Ga. Apr. 13, 2015)
(citation omitted), report and recommendation adopted, No.
1:14-CV-3471-0DE-JCF, 2015 WL 11622473 (N.D. Ga. May 6,
2015). Plaintiffs may also recover non-pecuniary damages,
including for emotional distress. Ranger, 757 F. App'x at
902. A plaintiff's testimony can support emotional distress
damages, but "the testimony must establish that the plaintiff
suffered demonstrable emotional distress, which must be
sufficiently articulated; neither conclusory statements that

the plaintiff suffered emotional distress nor the mere fact
that a . . . violation occurred supports an award for
compensatory damages." McLean v. GMAC Mortg. Corp., 398 F.
App'x 467, 471 (11th Cir. 2010) (quoting Akouri v. Fla.
Dep't of Transp., 408 F.3d 1338, 1345 (11th Cir.2005)). "Where
a plaintiff comes forth with only blanket statements and a
list of symptoms, courts in the Middle District of Florida
have declined to award actual damages for emotional
distress." Lane v. Accredited Collection Agency Inc., No.
6:13-cv-GKS-GJK, 2014 WL 1685677, at *8 (M.D. Fla. Apr. 28,
2014).

Importantly, to obtain actual damages, plaintiffs must
"establish a causal link between" the alleged RESPA violation
and their damages. Renfroe, 822 F.3d at 1246. Failure to
adequately investigate a notice of error in a QWR, resulting
in a failure to refund a borrower's account, can provide such
a causal link. Id. at 1246—47. However, for a causal link to
exist between an inadequate investigation into a QWR and
actual damages, the borrower must have specifically asked the
servicer in the QWR to fix what he later claims as actual
damages. See Caldwell v. Nationstar Mortg., LLC, No. 20-
12984, 2021 WL 1229754, at *2—3 (11th Cir. Mar. 31, 2021)
("Nationstar's failure to do what Caldwell did ask it to do

24

— provide information about the mortgage — did not cause his damages."). Additionally, borrowers cannot cause their own actual damages by "fail[ing] to make payments that they knew they owed." Russell v. Nationstar Mortg., LLC, No. 14-61977-CIV, 2015 WL 5029346, at *7 (S.D. Fla. Aug. 26, 2015). Finally, borrowers must "meaningfully participate" in the resolution process to claim damages. Russell, 2015 WL 5819663, at *7—8 (holding for Defendant servicer because Plaintiff borrower "fail[ed] to meaningfully participate in this resolution process alongside Defendant" by not responding to Defendant's request for more detail).

As to statutory damages, Plaintiffs may be entitled to "recover . . . up to $2,000 per violation if they can show the violation was part of a 'pattern or practice of noncompliance' with RESPA's requirements." Ranger, 757 F. App'x at 901 n.2 (quoting 12 U.S.C. § 2605(f)(1)(B))). "[C]ourts have interpreted the term 'pattern or practice' in accordance with the usual meaning of the words." McLean, 595 F. Supp. 2d at 1365. "'Pattern or practice' is not defined by a specific number of offenses; rather, the term suggests a standard or routine way of operating." Miranda v. Ocwen Loan Servicing, LLC, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015). "[T]he Eleventh Circuit [has] held that statutory damages may

be sufficiently ple[d] where, in addition to the alleged RESPA violation against a plaintiff, the complaint alleges unrelated RESPA violations." <u>Mejia v. Ocwen Loan Servicing, LLC</u>, 703 F. App'x 860, 865 (11th Cir. 2017) (citing <u>Renfroe</u>, 822 F.3d at 1247). Finally, the Eleventh Circuit observed in dicta that "a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." <u>Renfroe</u>, 822 F.3d at 1247 n.4. District courts have subsequently held that actual damages are required for statutory damages to be recoverable. <u>See</u>, <u>e.g.</u>, <u>Berene v. Nationstar Mortg. LLC</u>, No. 14-61153-CIV, 2018 WL 7137836, at *9 (S.D. Fla. Feb. 5, 2018), <u>aff'd</u>, 800 F. App'x 756 (11th Cir. 2020).

Here, the Munozes alleged actual damages stemming from CitiMortgage's purported failure to conduct an adequate and reasonable investigation into the QWR. (Doc. # 57 at 3). In their second and third notices of error, the Munozes argued that CitiMortgage misapplied payments totaling $6,049.01. (Doc. # 45-1 at 39—40). According to the Munozes, an injury of $6,049.01 resulted from CitiMortgage "failing to conduct an adequate and reasonable investigation" into the second and third notices of error. (Doc. # 45 at 9—10). The Munozes maintained this claim for damages in their response to CitiMortgage's Motion for Summary Judgment. (Doc. # 60 at

12).

There are two primary issues with these damages. First, the Munozes did not provide CitiMortgage with enough information to identify the alleged misapplication of payments in their QWR. (Doc. 45-1 at 39—40). In CitiMortgage's response to the QWR, it asked the Munozes to provide information to help identify which payments they thought had been misapplied. (Doc. # 56-1 at 14). However, the Munozes never responded to CitiMortgage's inquiry. (Doc. # 54 at 10; Doc. # 45 at 11). CitiMortgage thusly gave the Munozes an opportunity to help identify and fix their purported injury, and the Munozes failed to participate. When a servicer asks for additional information in good faith and the borrower fails to respond, there is no RESPA violation. Russell, 2015 WL 5819663, at *7—8. Instead of meaningfully participating in the resolution process, the Munozes vaguely alleged payment misapplication and then sued CitiMortgage for not fixing the misapplied payments when CitiMortgage had insufficient information to know which payments the Munozes disputed. Second, the Munozes did not submit evidence showing payment misapplication amounting to $6,049.01. In their answers to CitiMortgage's interrogatories, the Munozes argued that CitiMortgage did not credit fourteen payments, totaling

$6,049.01, to their account. (Doc. # 55 at 53). However, the Munozes' payment history does not show that CitiMortgage misapplied the disputed payments. (Doc. # 56-1 at 52—53).

The Munozes' second category of actual damages is $972.05 based on two payments that CitiMortgage "failed to credit" to the Munozes' loan. (Doc. # 55-1 at 55). This claim of actual damages fails due to lack of causation. In their second amended complaint, the Munozes argued that "[t]he payment history CitiMortgage provided in response to the QWR" alerted the Munozes to "two other payments that Munozes sent to CitiMortgage that were confirmed debited from their checking account by CitiMortgage were not credited to their loan." (Doc. # 45 at 11—12). The issue here is that the Munozes' alleged RESPA violation is "failure to adequately respond to the[] Qualified Written Request ("QWR") under Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA.")." (Doc. # 60 at 3). But the Munozes only discovered this alleged injury because of CitiMortgage's response to the QWR. CitiMortgage's response to the QWR may have alerted the Munozes to the existence of these damages, but it did not cause the damages. The Munozes did not ask CitiMortgage to remedy this issue in the QWR, so there is not a causal connection between it and the alleged inadequate response to

the QWR. See Caldwell, 2021 WL 1229754, at *2–3 (finding
Defendant not liable for not doing what Plaintiff had not
asked it to do in the QWR). Furthermore, the Munozes' payment
history shows that CitiMortgage credited these two disputed
payments to the Munozes' account. (Doc. # 56-1 at 55).

The Munozes' third type of actual damages, discussed in
their fourth notice of error, stems from CitiMortgage's
failure to properly credit escrow payments to the Munozes'
account. This claim for damages also fails because of a lack
of causation. The Munozes stopped making principal and
interest payments in June 2018, instead only making payments
that they wanted to go toward escrow. (Doc. # 45 at 5).
However, under the terms of the mortgage, any payments
received from a borrower were first applied to interest, then
to principal, then to escrow. (Doc. # 45-1 at 14). The
borrower could not choose to stop paying principal and
interest, and dedicate all payments to escrow. (Id.). The
Munozes thusly "failed to make payments that they knew they
owed." Russell, 2015 WL 5029346, at *7. In such situations,
there is no causal link between the alleged RESPA violation
and actual damages. Id. And, once more, CitiMortgage asked
the Munozes for help identifying the misapplied payments,
since the QWR provided little detail as to which payments had

29

been misapplied. (Doc. # 56-1 at 14). The Munozes never responded to CitiMortgage's inquiry. (Doc. # 45 at 13). When borrowers fail to meaningfully participate in a QWR resolution process, there is no RESPA violation. Russell, 2015 WL 5819663, at *7—8.

The Munozes' fourth type of damages is $368 charged by CitiMortgage for fees. (Doc. ## 45 at 15; 57 at 7). The Munozes argued that these damages arose "[a]s a result of CitiMortgage's breach of RESPA by failing to conduct an adequate and reasonable investigation of Munozes' fifth notice of error." (Doc. # 45 at 15). Multiple causation issues preclude this type of damages. First, in the QWR, the Munozes only alleged that CitiMortgage had inappropriately charged one inspection fee. (Doc. # 45-1 at 41). Each inspection fee charged by CitiMortgage ranged from $10-$84. (Doc. # 56-1 at 51—55). When CitiMortgage responded to the Munozes' fifth notice of error, it sent a transaction history that showed many inspection fees. (Id.). The Munozes used this transaction history to claim additional damages, based on the new fees they discovered, in their second amended complaint. (Doc. # 45 at 14—15). However, for a causal link to exist between an inadequate investigation into a QWR and actual damages, the borrower must have asked in the QWR that the

servicer fix what he later claims as actual damages. Caldwell, 2021 WL 1229754, at *2—3. Second, CitiMortgage explained in its response to the fifth notice of error that it charged the inspection fee because "[m]ortgage properties are routinely inspected during periods of default and bankruptcy." (Doc. # 56-1 at 14). The Munozes' contention that CitiMortgage failed to conduct a reasonable investigation is thusly premised on their disagreement with the outcome of the investigation. Such disagreement does not establish that an inadequate investigation occurred, which is the basis of the Munozes' claim for damages here. Finster, 245 F. Supp. 3d at 1316.

The Munozes argued in their second amended complaint that CitiMortgage violated RESPA by providing credit information to consumer reporting agencies, which caused the Munozes' credit score to decrease. (Doc. # 45 at 16). CitiMortgage submitted a credit report for the Munozes that showed no open mortgages. (Doc. # 55-1 at 45). In their response to CitiMortgage's Motion for Summary Judgment, the Munozes did not offer any evidence supporting damages suffered due to a decreased credit score. The Munozes have failed to show that they have incurred any damages in the form of a decreased credit score.

Finally, the Munozes alleged actual damages of "time and

money spent in [a separate] lawsuit against Cenlar[,] including the costs and legal fees in the lawsuit," and emotional distress in their second amended complaint. (Doc. # 45 at 18). But once again, they failed to offer evidence in their response to CitiMortgage's Motion for Summary Judgment supporting such damages. Sheila Munoz stated that CitiMortgage's refusal to "explain and correct" their account errors caused the Munozes to file a separate lawsuit against Cenlar. (Doc. # 61 at 9). She also said that CitiMortgage's "failure to adequately respond to [the Munozes'] QWR" caused emotional distress, including emotional and psychological trauma and embarrassment. (Id. at 10). Even assuming CitiMortgage violated RESPA, the Munozes did not explain how CitiMortgage's purportedly inadequate investigation into the QWR caused them to file suit against Cenlar. Furthermore, although plaintiffs may testify in support of emotional distress damages, the testimony cannot merely consist of conclusory statements and a list of symptoms. McLean, 398 F. App'x at 471; Lane, 2014 WL 1685677, at *8. Here, each of Sheila Munoz's statements is conclusory, without evidence or support. Second, the Munozes have not explained how there is a causal link between a RESPA violation and the emotional distress suffered. The Munozes have failed to show that they

32

incurred any damages in the form of emotional distress or a subsequent lawsuit.

In addition to actual damages, the Munozes alleged statutory damages based on CitiMortgage's "pattern or practice of non-compliance with the requirements of the mortgage service provisions of RESPA." (Doc. # 45 at 19). However, there can be no statutory damages in the absence of actual damages. Renfroe, 822 F.3d at 1247 n.4; Berene, 2018 WL 7137836 at *9. Because there is no genuine issue of material fact as to actual damages, there can be no statutory damages.

**B. Plaintiffs' Motion**

As the Court has already determined that summary judgment in favor of CitiMortgage on all counts is appropriate, the Court denies Plaintiffs' Partial Motion for Summary Judgment. (Doc. # 57).

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

(1) Defendant CitiMortgage's Motion for Summary Judgment (Doc. # 54) is **GRANTED** on all counts.

(2) Plaintiffs Sheila and Raymond Munozes' Motion for Partial Summary Judgment (Doc. # 57) is **DENIED** on all counts.

(3) The Clerk shall enter judgment accordingly and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of September, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE